D.M. BERRY, for himself and all Retirants who retired prior to July 1, 1981, receiving benefits from the Oklahoma Public Employees Retirement System established pursuant to 74 Oklahoma Statutes, Section 901, et al., Appellants

v.

STATE of Oklahoma ex rel., OKLAHOMA PUBLIC EMPLOYEES RETIREMENT SYSTEM, Appellees.

No. 65499.

Supreme Court of Oklahoma.

Jan. 31, 1989.

Michael Burrage, Joe Stamper, Stamper, Otis & Burrage, Antlers, Alan B. McPheron, McPheron, Webster & Craige, Durant, for appellants.

L.E. Stringer, Larry E. Joplin, Harvey D. Ellis, Jr., Crowe & Dunlevy, Oklahoma City, for appellees.

SUMMERS, Justice.

The plaintiff, D.M. Berry, appeals from the trial court's order granting summary judgment in favor of the defendant, Okla-

---

homa Public Employees Retirement System (OPERS). Although filed as a class action, the trial court never reached the question of certification.[1] Consequently, our decision reaches only the claims of Berry individually. We find that the proper construction of § 930.1(B) of title seventy-four of the Oklahoma Statutes requires that OPERS compute benefits thereunder for persons retiring before July 1, 1981 by using the maximum allowable average compensation which was effective at the date of the claimant's retirement, and accordingly affirm the order of the district court.

Berry retired as chairman of the Oklahoma Tax Commission in October of 1977. At the time of his retirement, he was entitled to credit for twenty-nine years of service, and draws benefits from OPERS pursuant to the provisions of 74 O.S.1981 § 901 et seq. In 1985, Berry brought this action seeking a judgment declaring that benefits computed pursuant to §§ 930.1(B) and 915(A)(1) required application of $25,000 as the maximum allowable average compensation.

Resolution of this matter turns upon construction of § 930.1(B) which provided that

"retirants who retired prior to July 1, 1981, shall receive benefits computed as of July 1, 1982, in accordance with the formula outlined in paragraph 1 of subsection A of § 915 of this title, *except the percent factor of the maximum allowable average compensation in effect the date their employment was terminated with a participating employer shall be applicable* ..." 74 O.S.Supp.1982, § 930.1(B) (repealed by Laws 1985, c. 200, sec. 11. eff. July 24, 1985) (emphasis supplied).

The formula setting the benefits appears in § 915, which provides that:

A(1) "Effective July 1, 1981, any member who shall retire on or after his normal retirement date shall be enti-

tled to receive an annual retirement benefit equal to two percent (2%) of the member's final average compensation, multiplied by the number of years credited service that has been credited to the member in accordance with the provisions of § 913 of this title; however, the minimum amount shall be no less than the sum of One Hundred Twenty Dollars ($120.00) per annum multiplied by the number of years of credited service. Any member who has elected a vested benefit shall be entitled to receive benefits as outlined above except the percent factor of the maximum allowable average compensation in effect the date their employment was terminated with a participating employer shall be applicable."

The parties agree that pursuant to 74 O.S.Supp.1982 § 902(10) the maximum allowable compensation was raised from $15,000 to $25,000. They disagree whether the formula prescribed by statute for persons retiring before July 1, 1981 requires application of the new maximum allowable average compensation figure. The facts are uncontested, and the case requires application of existing rules of statutory construction.

■ We recognize the "cardinal rule of construction that the legislative intent is to be ascertained, enforced and given effect." *Baum v. Oklahoma City,* 190 Okl. 618, 126 P.2d 249 (1942). Any doubt as to the meaning of a statute may be resolved by reference to its history. *Lekan v. P & L Fire Protection Co.,* 609 P.2d 1289, 1292 (Okla. 1980).

In construing any statute, we look first to its specific terms. "Where the language of a statute is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction, the statute will be accorded the meaning as expressed by the language therein em-

---

**1.** District Court Rule 13 provides that a motion for summary judgment "may be served at any time after the filing of the action ...", and nothing in 12 O.S.Supp.1984 § 2023 precludes the court from ruling on a motion for summary judgment before ruling on class certification. The relevant portion of 12 O.S.Supp.1984 § 2023

provides that "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits."

ployed." *Cave Springs Public School District v. Blair,* 613 P.2d 1046, 1048 (Okla. 1980). However, "the interpretation or construction of an ambiguous or uncertain statute by the agency charged with its administration is entitled to the highest respect from the courts ..." *Oral Roberts University v. Oklahoma Tax Commission,* 714 P.2d 1013, 1014 (Okla.1986).

■ Here, the opposing constructions placed upon the statutory language in question suggest its ambiguity. Berry urges that the $25,000 figure be used in computing his benefits. He argues that the clause "in effect the date their employment was terminated" applies to the clause "the percent factor", and that OPERS' construction renders meaningless the language "the percent factor" in contravention of the rule of statutory construction which gives effect to all of the words of a statute. *Independent School District v. Oklahoma City Federation of Teachers,* 612 P.2d 719, 722 (Okla.1980).

OPERS, on the other hand, in support of its practice of using the $15,000 figure as to pre-July 1, 1981 retirees, contends that the successive prepositional phrases: (1) "of the maximum allowable average compensation"; and (2) "in effect the date their employment was terminated...." must be read together, and given their most logical construction, i.e. that the latter modifies the former. In support of its argument, OPERS offers both the legislative history and its consistent construction and application of the statute. Ordinarily agency construction of an ambiguous statute "will not be disturbed except for very cogent reasons, provided that the construction so given was reasonable." *Oral Roberts University v. Oklahoma Tax Commission,* supra at 1014–15.

Our examination of the legislative history discloses that in 1981, the legislature, by way of the sections under examination, changed the methods for calculating retirement benefits. Before 1981, two different formulas applied. These formulas computed benefits in two categories, prior service and participating service.[2]

Prior service benefits were computed by multiplying a fixed dollar amount by the number of years of prior credited service, with the number of years credit determined by § 913. See, e.g. 74 O.S.1971 § 915(A)(1). Participating service benefits were and are computed by multiplying a percent factor of maximum allowable average compensation by the number of years of participating service, again as determined by § 913.

The effect of the 1981 legislative change was to calculate both prior and participating benefits by using the same formula. This formula (percent factor of maximum allowable average compensation multiplied by years of credited service) has been used to determine the members' benefits for participating service since 1963.

Section 915(A)(1), adopted 1981, increased benefits for retirants, but the new method of calculating benefits thereunder applied only to employees retiring on or after July 1, 1981. Consequently, in 1982, to remedy the varying treatment afforded pre-July 1, 1981 retirants and post-July 1, 1981 retirants, the legislature, through § 930.1(B), required OPERS to calculate benefits for all retirants by applying the § 915(A)(1) formula. The new statute then, applied the formula to both participating and prior credited service for *all* retirants.

However, § 915(A)(1) contains the same exception set forth in § 930.1(B), that the percent factor (2%) of the maximum allow-

---

2. Participating and prior service are defined by 74 O.S.Supp.1985 § 902(26), (27). " 'Participating service' means the period of employment after the entry date for which credit is granted a member," and " 'prior service' means the period of employment of a member by an eligible employer prior to his entry date for which credit is granted a member under this act."

Before enactment of the statute here at issue, prior service was credited according to 74 O.S. 1981 § 913, and was based on the number of years of employment as measured by the criteria set out therein.

"Entry date" means the date as of which an eligible employer joins the state Public Employees Retirement System. 74 O.S.Supp.1985 § 902(16)

able average compensation *in effect at the date employment was terminated* applies in making benefit computations. We believe the legislative intent as demonstrated in the exception requires the use of the maximum allowable average compensation in effect at the time the employee retired, which in this case was $15,000.00.

The legislature did not change the formula for determining benefits based on participating service that had been used since the inception of OPERS,[3] but rather made that formula applicable to both participating and prior credited service. Further, OPERS has consistently paid benefits based upon the maximum allowable average compensation in effect at the time of the employee's retirement. This practice comports with the entire statutory scheme in that a member's benefits are paid according to contributions made by the employer and member during employment, and such contributions are made in accordance with the maximum compensation allowed under the act.[4]

The construction urged by appellant would require benefits to be calculated for members retiring before July 1, 1981 by looking at a definition of average compensation in 1982 which was never used by employees in making their contributions to OPERS. A statute must be construed in a reasonable and sensible manner, and in a manner which avoids absurd consequences. *Udall v. Udall,* 613 P.2d 742, 745 (Okla. 1980); *City of Norman v. Liddell,* 596 P.2d 879, 882 (Okla.1979).

The legislative history and agency construction of these statutes compel us to agree with OPERS' position, and we find no cogent reason to deviate therefrom. Accordingly, the order of the district court is affirmed.

OPALA, V.C.J., and LAVENDER, SIMMS, DOOLIN and ALMA WILSON, JJ., concur.

KAUGER, J., concurs in result.

HODGES, J., not participating.

---

**3.** The legislature has reenacted the same formula to determine benefits numerous times since the inception of OPERS. *See,* 1963 Session Laws, Ch. 50, sec. 15; 1968 Session Laws, Ch. 400, sec. 3; 1970 Session Laws, Ch. 296, sec. 6; 1973 Session Laws, Ch. 279, sec. 7; 1975 Session Laws, Ch. 267, sec. 5; 1976 Session Laws, Ch. 207, sec. 5; 1979 Session Laws, Ch. 285, sec. 9; 1981 Session Laws, Ch. 316, sec. 2; 1985 Session Laws, Ch. 300, sec. 5.

**4.** 74 O.S.1981 §§ 919.1, 920. These sections were altered by 1988 amendments, which amendments do not affect this matter.