1999 OK 43

## INDEPENDENT FINANCE INSTITUTE, et al. Plaintiffs/Appellees,

v.

## Earl CLARK, Acting Administrator, Oklahoma Department of Consumer Credit, and the Oklahoma Department of Consumer Credit, Defendants/Appellants.

No. 89,504.

Supreme Court of Oklahoma.

May 11, 1999.

As Amended on Denial of Rehearing Nov. 4, 1999.

John B. Gelders, Richard A. Grimes, Harold D. Stratton, Jr., James A. McCaffrey, Melvin R. McVay, Jr., Sandy L. Schovanec, Phillips McFall McCaffrey, Oklahoma City, Oklahoma, For Plaintiffs/Appellees,

W.A. Drew Edmondson, Attorney General of Oklahoma, Walter W. Jenny, Jr., Assistant Attorney General Oklahoma City, Oklahoma, For Defendants/Appellants.

¶ 1 KAUGER, J.:

¶ 2 In 1969, the Oklahoma Legislature enacted the Oklahoma Consumer Credit Code, (the Code) 14A O.S.1991 §§ 1–101 et seq. This first impression question concerns the regulation and refinancing of supervised loans and supervised lenders under the Code. Supervised loans are consumer loans in which the rate of the loan finance charge exceeds ten percent per year.[1] Supervised lenders are persons who make supervised loans.[2]

¶ 3 Title 14A O.S.1991 § 3–508A[3] of the Code covers large supervised loans and allows lenders to contract for a loan finance

---

1. Title 14A O.S.1991 § 3–501 provides:
 "(1) 'Supervised loan' means a consumer loan in which the rate of the loan finance charge exceeds ten percent (10%) per year as determined according to the provisions on loan finance charge for consumer loans (Section 3–201).
 (2) 'Supervised lender' means a person authorized to make or take assignments of supervised loans."

2. Id.

3. Title 14A O.S.1991 § 3–508A provides in pertinent part:

 "(1) With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.
 (2) The loan finance charge, calculated according to the Actuarial Method, may not exceed the equivalent of the greater of either of the following:
 (a) the total of
 (i) thirty percent (30%) per year on that part of the unpaid balances of the principal which is Three Hundred Dollars ($300.00) or less;

charge when making a loan. Section 3–508B[4] of the Code deals with small supervised loans which are limited to no more than $640.00. Section 3–508B permits lenders to collect an acquisition charge and an installment account handling charge when making a loan under this section *in lieu of the lower loan finance charges which are available to large lenders under § 3–508A.*

¶4 Title 14A O.S.1991 § 3–205 of the Code, which governs refinancing of con-

> (ii) twenty-one percent (21%) per year on that part of the unpaid balances of the principal which is more than Three Hundred Dollars ($300.00) but does not exceed One Thousand Dollars ($1000.00); and
> (iii) fifteen percent (15%) per year on that part of the unpaid balances of the principal which is more than One Thousand Dollars ($1000.00); or
> (b) twenty-one percent (21%) per year on the unpaid balances of the principal.
> ..."

This statute was amended in 1997, see discussion p. 10, infra.

4. Title 14A O.S.1991 § 3–508B provides in pertinent part:

> "(1) On loans having a cash advance of One Hundred Dollars ($100.00) or less, a supervised lender may charge in lieu of the loan finance charges specified in Section 3–508A, the following amounts:
> (a) on any amount up to and including Twenty-nine Dollars and ninety-nine cents ($29.99), a charge may be added at the ratio of One Dollar ($1.00) for each Five Dollars ($5.00) cash advanced to the borrower;
> (b) on any cash advance in an amount in excess of Twenty-nine Dollars and ninety-nine cents ($29.99) up to and including the amount of Thirty-five Dollars ($35.00), there shall be allowed an acquisition charge for making the advance not in excess of 1/10 of the amount of the cash advanced. In addition thereto, an installment account handling charge shall be allowed not to exceed Three Dollars ($3.00) per month;
> ...
> (2) The maximum term of any loan made under the terms of this section shall be one (1) month for each Ten Dollars ($10.00) of cash advance up to a maximum term of ten (10) months. Provided, however, that under subsections (e) and (f) the maximum terms shall be one (1) month for each Twenty Dollars ($20.00) of cash advance up to a maximum term of ten (10) months.
> ...
> (4) The acquisition charge authorized herein shall be deemed to be earned at the time a loan

sumer loans, provides that refinancing charges for supervised loans are limited pursuant to "the provision on loan finance charge for supervised loans (Section 3–508)."[5] Although Oklahoma's version of the Uniform Code contains a § 3–508A and a § 3–508B, it has no § 3–508. Because the statute as enacted referred to a non-existent § 3–508,[6] apparently in an attempt to clear up confusion, the publisher of the 1969 Session Laws added a footnote to the statute indicating that the reference to § 3–508

> is made and shall not be subject to refund. On the prepayment of any loan under this section, the installment account handling charge shall be subject to the provisions of Section 3–210 as it relates to refunds. Provisions of Section 3–203 as it relates to delinquency charges and Section 3–204 as it relates to deferral charges shall apply to loans made under the section."

Section 3–508B(1) refers to loans having a cash value of one hundred dollars ($100.00) or less. This was the language included in the 1969 adoption of the Consumer Credit Code. Title 14A O.S.1991 § 1–106, first adopted in 1979, provides that the dollar amounts in § 3–508A(2)(a) and § 3–508(1) be adjusted annually for inflation. The dollar amount of $640.00 was in effect when the Attorney General issued his Opinion. This statute was amended in 1997, see discussion p. 10, infra.

5. Title 14A O.S.1991 § 3–205 provides in pertinent part:

> "With respect to a consumer loan, refinancing, or consolidation, the lender may by agreement with the debtor refinance the unpaid balance and may contract for and receive a loan finance charge based on the principal resulting from the refinancing at a rate not exceeding that permitted by the provisions on loan finance charge for consumer loans (Section 3–201) or *the provisions on loan finance charge for supervised loans (Section 3–508),*[1] *whichever is appropriate.*
> ...

6. The version of 14A O.S.1991 § 3–205, which was signed by the Governor on May 8, 1969, does not contain a footnote that reads "Should read (Section 3–508A)." Rather, the publisher of the 1969 Session Laws added the footnote and the corresponding language when it published the statute, apparently in an attempt to clear up confusion because the statute as enacted referred to a § 3–508 which did not exist. 1969 Okla. Sess. Laws Ch. 352. This same language was included in the 1971, 1981, and 1991, compilations of the statutes. See, 14A O.S.1971 § 3–205; 14A O.S.1981 § 3–205; 14A O.S.1991 § 3–205. The same correction was made to 14A O.S.1991 §§ 3–206 and 3–208 of the Code which

"[s]hould read Section 3–508A" when it published the statute. Accordingly, the dispositive issue presented [7] is whether lenders who refinance supervised loans are restricted by the finance charges set forth in 14A O.S.1991 § 3–508A or § 3–508B.[8] We hold that because of the strictures of 14A O.S.1991 § 3–205,[9] lenders who refinance supervised loans, whether initially made under either § 3–508A or § 3–508B, are limited to assessing loan finance charges permitted by § 3–508A.

## FACTS

¶ 5 Since the Oklahoma Consumer Credit Code's adoption in 1969, the Oklahoma Department of Consumer Credit, (the Department) had allowed supervised lenders to refinance supervised loans and charge fees assessed under either § 3–508A [10] or § 3–508B,[11] depending on which statute the loan was initially made.

¶ 6 On August 1, 1996, the appellant, the Administrator of the Department, requested a formal opinion from the Attorney General asking for a determination of whether it had been properly enforcing § 3–205 insofar as the refinancing of supervised loans was concerned. On February 20, 1997, in response to the inquiry,[12] the Attorney General issued Opinion No. 96–84, finding that lenders who issue loans under § 3–508B may not impose the same finance charges allowed under § 3–508B when refinancing loans. The opinion held that pursuant to 14A O.S.1991 § 3–205, lenders are limited to assessing charges permitted under § 3–508A when refinancing a § 3–508B loan.[13] After the Attorney General's opinion, the Administrator notified lenders that enforcement of the opinion would not begin until March 3, 1997.

¶ 7 After receiving the Administrator's letter, the Independent Finance Institute and twenty-seven lenders, filed an action in the district court of Oklahoma County on February 27, 1997. The cause was brought pursuant to the declaratory judgment provision of the Oklahoma Administrative Procedures Act, 75 O.S.1991 § 306.[14] The lenders argued that the Department's twenty-seven year interpretation of the statute controlled, and that they should be allowed to continue to refinance loans and charge fees assessed under § 3–508B rather than being confined to the limits of § 3–508A. They sought a permanent injunction and a temporary restraining order to restrain the Department from implementing the Attorney General's opinion. The next day, the district court issued a temporary restraining order, prohibiting the

govern consolidation and other advances of supervised loans, respectively.

7. The Department, in addition to appealing the trial court's award of costs, also asserts that: 1) the Independent Finance Institute and the Oklahoma Small Loan Association cannot have standing because they are not supervised lenders under the Code and are therefore not directly affected by the Attorney General opinion; and 2) the lenders failed to first exhaust their administrative remedies before filing suit. We find both of these arguments without merit. This Court has recognized that an association can have standing to seek relief on behalf of its members. *State ex rel. Henry v. Southwestern Bell Telephone Co.*, 1991 OK 134, ¶ 8–9, 825 P.2d 1305, 1309; *Private Truck Council of America, Inc., v. Oklahoma Tax Com'n*, 1990 OK 54, ¶ 31, 806 P.2d 598, 607, *vacated and remanded on other grounds by National Private Truck Council, Inc. v. Oklahoma Tax Com'n*, 501 U.S. 1247, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991); *Missouri–Kansas Texas R.R. v. State*, 1985 OK 108, ¶ 19, 712 P.2d 40, 42; *Democratic Party of Oklahoma v. Estep*, 1982 OK 106, ¶ 7–8, 652 P.2d 271, 274. Although exhaustion of administrative remedies is a prerequisite for resort to the courts as a general rule, this cause was brought pursuant to 75 O.S. 1991 § 706(D) which dispenses with the exhaustion requirement.

8. Title 14A O.S.1991 § 3–508A, see note 3, supra; 14A O.S.1991 § 3–508B, see note 4, supra.

9. Title 14A O.S.1991 § 3–205, see note 5, supra.

10. Title 14A O.S.1991 § 3–508B, see note 4, supra.

11. Title 14A O.S.1991 § 3–508A, see note 3, supra.

12. The Administrator's inquiry provided:

"When refinancing a small consumer loan— that is, a loan of less than $640—may supervised lenders, under the provisions of 14A O.S. 1991, § 3–508B, impose an acquisition charge or an installment account handling charge in lieu of the less costly finance charge permitted under 14A O.S.1991 § 3–508A?"

13. Title 14A O.S.1991 § 3–508A, see note 3, supra.

14. See, 75 O.S.1991 § 706.

Department from implementing or acting upon the Attorney General opinion.

¶ 8 On March 7, 1997, the Oklahoma Small Loan Association and three additional lenders intervened and joined in the lawsuit. The trial court entered a declaratory judgment on April 30, 1997, and it issued a permanent injunction finding that the Code permits lenders to contract and receive finance charges permitted under 14A O.S.1991 § 3–508B when refinancing, consolidating, or making advances under loans originally made under § 3–508B.[15] On May 30, 1997, the Administrator, on behalf of the Department sought review of the trial court's declaratory judgment.

¶ 9 BECAUSE OF THE STRICTURES OF 14A O.S.1991 § 3–205, LENDERS WHO REFINANCE SUPERVISED LOANS, WHETHER INITIALLY MADE UNDER EITHER § 3–508A OR § 3–508B, ARE LIMITED TO ASSESSING LOAN FINANCE CHARGES PERMITTED BY 14A O.S.1991 § 3–508A. HOWEVER, THE LEGISLATURE AMENDED §§ 3–205 AND 3–508B IN MAY OF 1997. THE AMENDED VERSION OF § 3–205, WHICH BECAME EFFECTIVE ON AUGUST 29, 1997, SPECIFICALLY REFERS TO § 3–508A AND EXCLUDES § 3–508B, WHILE § 3–508B NOW INCLUDES ITS OWN REFINANCING PROVISIONS, AND PROVIDES FOR REBATES OF CHARGES UPON REFINANCING.

15. Title 14A O.S.1991 § 3–508B, see note 4, supra. After the trial court's ruling, two of the lenders filed a motion for costs, seeking $567.00 for costs and expenses in bringing this action. On July 23, 1997, the trial court awarded the lenders $407.00 in costs. On August 19, 1997, the Department amended its petition in error to include an appeal of the trial court's award of costs. Because we find that the trial court erred in reversing the Attorney General's opinion, we need not determine whether the trial court properly awarded costs to the lenders.

16. Title 14A O.S.1991 § 3–508A, see note 3, supra.

17. Title 14A O.S.1991 § 3–508B, see note 4, supra. Section 3–508B limits small supervised loans to a maximum term of ten months and

¶ 10 Section 3–508A[16] of the Oklahoma Consumer Credit Code, allows lenders to contract for a loan finance charge when making a loan under this section. Section 3–508B[17] permits lenders to collect an acquisition charge and an installment account handling charge when making a loan under this section *in lieu of the lower loan finance charges which are available to large lenders under § 3–508A.* Sections 3–205, 3–206, and 3–208 of the Code govern refinancing, consolidation, or other advances of supervised loans, respectively.[18] This controversy centers around supervised loan refinancing.[19]

¶ 11 Section 3–205 provides in pertinent part:

"With respect to a consumer loan, refinancing, or consolidation, the lender may by agreement with the debtor refinance the unpaid balance and may contract for and receive a loan finance charge based on the principal resulting from the refinancing at a rate not exceeding that permitted by the provisions on loan finance charge for consumer loans (Section 3–201) or *the provisions on loan finance charge for supervised loans (Section 3–508),*[1] *whichever is appropriate.*

. . .

1 Should read "(Section 3–508A)" " (Emphasis supplied.)

 ¶ 12 It is undisputed that Oklahoma's version of the Uniform Code does not contain a § 3–508, and that the publisher of the 1969 Session Laws added a footnote to the statute indicating that the reference to § 3–508

makes no reference to refinancing within its confines.

18. See, 14A O.S.1991 § 3–205; 14A O.S.1991 § 3–206; and 14A O.S.1991 § 3–208.

19. It has been argued that the charges assessed under 14A O.S. Supp.1998 § 3–508B, especially in the event of refinancing, violate the Oklahoma Constitution, art. XIV, § 2 because there is no fixed maximum rate of interest. See, Suzanne E. Schreiber, "If There is No Rate, You Must Rebate: Small Loan Laws in Oklahoma," 34 Tul. L.J. 409 (1999). Apparently, this issue is pending in the lower courts as well, however, this constitutional question was not presented by the issues raised in this appeal and was not asserted by the parties. Consequently, we need not decide the issue today.

"[s]hould read Section 3–508A."[20] In contravention of its long-standing policy, the Department asserts that the Attorney General's opinion is correct and that when refinancing a small supervised consumer loan made under the provisions of § 3–508B, lenders are limited to assessing the loan finance charges permitted by § 3–508A. The lenders argue that the Department's twenty-seven year interpretation of the statute is controlling and that lenders are allowed to refinance loans and charge fees assessed under § 3–508B, rather than being confined to the limits of § 3–508A.[21]

■ ¶ 13 We disagree with the lender's contention. Generally, construction of an ambiguous or uncertain statute by an administrative agency charged with its administration, although not controlling, is entitled to the highest respect from the courts—especially when construction is definitely settled and uniformly applied for a number of years. We do not intend to ignore, abrogate or diminish this rule of construction. However, the construction given must have been reasonable and not clearly wrong.[22] This case does not belong in the line of cases which hold that long-standing enforcement by an administrative agency is entitled to great weight. Here, the Department has conceded that the Attorney General's opinion set forth the correct interpretation of Oklahoma law. Although this reason standing alone might not be sufficient to reach this result, there are other factors which require that we reach the same conclusion as that of the Attorney General.

■ ¶ 14 The determination of legislative intent controls statutory interpretation.[23] The intent is ascertained from the whole act in light of its general purpose and objective.[24] In construing statutes, relevant provisions must be considered together whenever possible to give full force and effect to each.[25] To ascertain legislative intent we look to the language of the pertinent statutes.[26] Doubt as to the meaning of a statute may be resolved by reference to its enacted history.[27]

■ ¶ 15 When the Oklahoma Code was first adopted in 1969, it was based primarily on the Uniform Consumer Credit Code. However, Oklahoma's version contained more than two hundred legislative amendments, customizing it for Oklahoma.[28] One such amendment was Oklahoma's creation of §§ 3–508A and 3–508B. Although, the Uniform Code's § 3–508 is nearly identical to

20. See discussion, note 6, supra.

21. The lenders cite to 75 O.S.1991 § 12 in support of their proposition that the footnotes are not part of the statute. Section 12 provides:

"In all cases where there is a conflict between the original acts and adopted statutes, the original acts shall govern, and the adopted statutes shall be deemed as repealed, amended, or modified thereby, without reference to the date of the approval of such original acts. For purposes of this section, 'original acts' means the enrolled documents of the acts as produced by the house of origin."

We find this statute not helpful here. The original act referred to a section that does not exist. The adopted statute referred to the same section. The footnote, which was first added when the session laws were published, merely attempted to clarify the legislative oversight.

22. Hendrick v. Walters, 1993 OK 162, ¶ 17, 865 P.2d 1232, 1241–42; Oral Roberts Univ. v. Oklahoma Tax Com'n, 1985 OK 97, ¶ 9, 714 P.2d 1013, 1014–15; Berry v. Public Empl. Retirement System, 1989 OK 14, ¶ 8, 768 P.2d 898, 900.

23. Smicklas v. Spitz, 1992 OK 145, ¶ 8, 846 P.2d 362, 366; Clifton v. Clifton, 1990 OK 88, ¶ 7, 801 P.2d 693, 696; Fuller v. Odom, 1987 OK 64, ¶ 4, 741 P.2d 449, 452.

24. McSorley v. Hertz Corp., 1994 OK 120, ¶ 6, 885 P.2d 1343, 1346; Oglesby v. Liberty Mut. Ins. Co., 1992 OK 61, ¶ 8, 832 P.2d 834, 839; Smicklas v. Spitz, see note 23, supra.

25. Haney v. State, 1993 OK 41, ¶ 5, 850 P.2d 1087, 1089; Public Serv. Co. of Okla. v. State ex rel. Corp. Com'n, 1992 OK 153, ¶ 8, 842 P.2d 750, 752.

26. Tate v. Browning–Ferris, Inc., 1992 OK 72, ¶ 15, 833 P.2d 1218, 1228; State ex rel. Macy v. Freeman, 1991 OK 59, ¶ 8, 814 P.2d 147, 153.

27. McNeill v. City of Tulsa, 1998 OK 2, ¶ 9, 953 P.2d 329, 331; City of Hugo v. State ex rel. Public Employees Relations Bd., 1994 OK 134, ¶ 15, 886 P.2d 485, 492; Berry v. State ex rel. Okla. Public Employees Retirement System, 1989 OK 14, ¶ 5, 768 P.2d 898, 899.

28. See, Bryce A. Baggett and Fred H. Miller, "The Oklahoma Version of the Uniform Consumer Credit Code," 1969, printed at 14A O.S.A. at page 2, as part of the introduction to the Oklahoma Consumer Credit Code.

Oklahoma's § 3–508A,[29] the Uniform Code has no provision similar to Oklahoma's § 3–508B. Nevertheless, when the Legislature adopted § 3–205 of the Code, which governs refinancing of consumer and supervised loans, the statute made reference to a non-existent § 3–508. Section § 3–205 provides that refinancing charges for supervised loans are limited pursuant to "the provision on loan finance charge for supervised loans (Section 3–508)."[30] Accordingly, it is unclear from this reference to the non-existent § 3–508, whether, when a supervised lender refinances a consumer loan, it may only impose a loan finance charge in accordance with § 3–508A, or whether it can collect the more costly acquisition charges and installment account handling charges allowed under § 3–508B.

¶ 16 A subsequent amendment to an act can be used to ascertain the meaning of a prior statute.[31] Where the meaning of a prior statute is subject to serious doubt and has not been judicially determined, the pre-sumption arises that a subsequent amendment was meant to clarify, as opposed to change the prior statute.[32] In 1997, the Legislature addressed the oversight created by § 3–205's reference to the non-existent § 3–508, and in May of 1997, amended §§ 3–205, and 3–508B. The new version of § 3–205,[33] which became effective on August 29, 1997, specifically refers to § 3–508A and excludes § 3–508B, while § 3–508B now includes its own refinancing provisions, and provides for rebates of charges upon refinancing. It expressly limits the acquisition charges and installment account handling charges when a loan is refinanced.[34] Although not dispositive, these housekeeping amendments support the Department's position.

¶ 17 Oklahoma's Code, unlike the Uniform Code, creates a dichotomy between large supervised loans and small supervised loans.[35] Because the size of a small supervised loan is so small, supervised lenders are allowed to charge acquisition charges and installment account handling charges in lieu of the lower

---

**29.** Title 14A O.S.1991 § 3–508A, note 3, supra; See, U.C.C.C. § 3–508 (1968).

**30.** Title 14A O.S.1991 § 3–205, see note 5, supra.

**31.** *Quail Creek Golf v. Oklahoma Tax Com'n,* 1996 OK 35, ¶ 10, 913 P.2d 302, 304; See, *Texas County Irrigation & Water Resources Ass'n v. Oklahoma Water Resources Bd.,* 1990 OK 121, 803 P.2d 1119, 1122; *Board of Educ. v. Morris,* 1982 OK 142, 656 P.2d 258, 261; *Magnolia Pipe Line Co. v. Oklahoma Tax Com'n,* 196 Okla. 633, 167 P.2d 884, 888 (1946).

**32.** *Quail Creek Golf v. Oklahoma Tax Com'n,* see note 31, supra; *Texas County Irrigation & Water Resources Ass'n v. Oklahoma Water Resources Bd.,* see note 31, supra; *Board of Educ. v. Morris,* see note 31, supra; *Magnolia Pipe Line Co. v. Oklahoma Tax Com'n,* see note 31, supra.

**33.** Title 14A O.S. Supp.1998 § 3–205 provides in pertinent part:
"With respect to a consumer loan, refinancing, or consolidation, other than one made under Section 3–508B of this title, the lender may by agreement with the debtor refinance the unpaid balance and may contract for and receive a loan finance charge based on the principal resulting from the refinancing at a rate not exceeding that permitted by the provisions on loan finance charge for consumer loans (Section 3–201) or the provisions on loan finance charge for supervised loans (Section 3–508A), whichever is appropriate. For the purpose of determining the loan finance charge permitted,

other than in relation to Section 3–508B, the principal resulting from the refinancing comprises the following: ..."

**34.** Title 14A O.S. Supp.1998 § 3–508B provides in pertinent part:
"...
(4) Loans made under this section may be refinanced or consolidated according to the provisions of this section, notwithstanding anything in this act to the contrary. When a loan made under this section is refinanced or consolidated, installment account handling charges on the loans being refinanced or consolidated must be rebated pursuant to the provisions regarding rebate on prepayment (Section 3–210) as of the date of refinancing or consolidation. For the purpose of determining the amount of acquisition and installment account handling charges permitted in relation to the refinancing or the consolidation of loans made under this section, the principal resulting from the refinancing or consolidation is the total of the unpaid balances of the principal of the loans being refinanced or consolidated, plus any new money advanced, and any delinquency or deferral charges if due and unpaid, less any unearned acquisition and installment account handling charges imposed in connection with loans being refinanced or consolidated.
..."

**35.** Title 14A O.S.1991 §§ 3–508A and 3–508B, see notes 3 and 4, supra.

loan finance charge.[36] When a loan is prepaid, the lenders are allowed to keep the acquisition charge under Oklahoma's version of the Code, and only a portion of the installment account handling charge must be refunded.[37]

¶ 18 If the reference in § 3–205 were, as the lenders argue, read to allow small supervised lenders to refinance loans under the provisions of § 3–508B, they would recover acquisition fees· and installment account handling charges each time the loans are refinanced. The purpose of the Code is to protect consumers and encourage the development of fair and economically sound consumer credit practices.[38] Had the Legislature intended such a lucrative result on the part of small loan lenders at the expense of consumers,[39] it could have specifically provided so within the confines of § 3–508B, but it did not.

¶ 19 Rather, the Legislature provided small supervised lenders the benefit of acquisition charges and installment account handling charges when initiating a loan, without requiring a refund of the acquisition charges.[40] It appears that the trade off for this benefit is that when the small supervised loans are refinanced, they are limited to assessing only the loan finance charges under § 3–508A. The Legislature had the opportunity to change the statute before the recodification in 1971, but failed to do so.[41] The Legislature failed to amend § 3–205 of the Code from 1969 until 1997.[42] Apparently, when the Legislature became aware of the statutory inconsistency it amended § 3–205 to specifically refer to § 3–508A and to exclude § 3–508B,[43] expressly limiting the acquisition charges and installment account handling charges when a loan is refinanced.

¶ 20 Obviously, the Legislature originally intended, as the publisher of the 1969 Session Laws indicated by a footnote to the statute that the reference to § 3–508 "[s]hould read Section 3–508A." It is undisputed that the publisher inserted the footnote to § 3–205 to clarify any ambiguity in the Code. The Department asserts that the footnote became part of the statute by the Legislature's codification process. The Lenders insist that the footnote never became part of the statute. Generally, a pub-

**36.** Title 14A O.S.1991 § 3–508B, see note 4, supra.

**37.** *Id.*

**38.** Title 14A O.S.1991 § 1–102 provides ·in pertinent part:

"(1) This act shall be liberally construed and applied to promote its underlying purposes and policies.
(2) The underlying purposes and policies of this act are
. . .
(c) to further consumer understanding of the terms of credit transactions and to foster competition among suppliers of consumer credit so that consumers may obtain credit at reasonable cost;
(d) to protect consumer buyers, lessees, and borrowers against unfair practices by some suppliers of consumer credit, having due regard for the interests of legitimate and scrupulous creditors;
(e) to permit and encourage the development of fair and economically sound consumer credit practices;
. . ."

**39.** The Attorney General's opinion provides an example of how lenders would reap such a lucrative benefit by refinancing § 3–508B loans under that section. It provides in pertinent part:

"Instead of paying off their loans in full, many small supervised loan borrowers simply refinance the remaining debt, pay accrued charges, and either receive additional cash representing any principal they have repaid on the loan or simply extend the term of the loan. For example, a borrower who desires to receive $100 on a one-month note will be charged a $10 acquisition charge and a $9.60 installment account handling charge, for a total amount of $119.60 due in one month. If, on the due date, the borrower is unable to pay the entire $119.60, such a borrower often will refinance the note by simply paying the accrued charges of $19.60, in which case the amount owed at the end of the second month is once again $119.60. If this is repeated each month for a year, the borrower will have paid a total of $235.20 in acquisition charges and installment account handling charges, and still owe $119.60. The resulting effective annual percentage rate is 235.2%."

**40.** Title 14A O.S.1991 § 3–508B, see note 4, supra.

**41.** Title 14A O.S.1971 § 3–205.

**42.** Title 14A O.S.1981 § 3–205; 14A O.S.1991 § 3–205; 14A O.S. Supp.1998 § 3–205, see note 33, supra.

**43.** Title 14A O.S. Supp.1998 § 3–205, see note 33, supra.

854

lisher's correction becomes part of the statute if, as here, the publisher did not change the substantive meaning of the statute as it was originally intended by the Legislature.[44] Accordingly, when refinancing a small supervised consumer loan made under the prior provisions of § 3–508B, lenders are limited to assessing the loan finance charges permitted by § 3–508A. However, the Legislature, in May of 1997, amended §§ 3–205 and 3–508B. The new version of § 3–205 specifically refers to § 3–208A and excludes § 3–208B, while § 3–508B now includes its own refinancing provisions, and provides for rebates of charges upon refinancing.

¶ 21 However, we also realize that the Department's interpretation was relied upon by the industry for twenty-seven years, and that only six months lapsed from the time the Attorney General issued an opinion until the new legislative amendments became effective. Consequently, our pronouncement should apply to section 3–508B loans refinanced between March 3, 1997, and August 29, 1997. Because the remedy sought in this suit was a declaratory judgment and an injunction, we need not address the propriety of refunds of excessive charges.[45]

## CONCLUSION

¶ 22 The purpose of the Code is to protect consumers and encourage the development of fair and economically sound consumer credit practices.[46] Because of the strictures of 14A O.S.1991 § 3–205, lenders who refinance supervised loans, whether initially made under either § 3–508A or § 3–508B, are limited to assessing loan finance charges permitted by

14A O.S.1991 § 3–508A. However, the amended version of § 3–205, which became effective on August 29, 1997, specifically refers to § 3–208A and excludes § 3–208B, while § 3–508B now includes its own refinancing provisions, and provides for rebates of charges upon refinancing.

¶ 23 **TRIAL COURT REVERSED. PERMANENT INJUNCTION DISSOLVED.**

SUMMERS, C.J., HODGES, ALMA WILSON, KAUGER, and WATT, JJ., concur.

HARGRAVE, V.C.J., LAVENDER, SIMMS, and OPALA, JJ., dissent.

---

**44.** Title 75 O.S.1991 § 171 authorizes West Publishing Company to compile, codify and annotate the Oklahoma Statutes according to the terms, specifications and conditions directed by the Speaker of the House of Representatives and the President Pro Tempore of the Senate. See, *Protection Mut. Ins. Co. v. Kansas City*, 504 S.W.2d 127, 130 (Mo.1974) (Recognizing that absent a legislative act amending a law, statute revisors have no authority to change the substantive meaning and application of a law or its purpose and intent, and that any subsequent revision purporting to effect such a change is ineffective and the law as originally enacted must be construed and applied to accomplish the original legislative intent and purpose.); See also, *City of Ouray v. Olin*, 761 P.2d 784, 791 (Colo.1988) (Addition of words by revisor was not substantive change, but, rather, clarification of language making statute conform to commonly understood legislative intent.).

**45.** See, *Great Northern Ry. v. Sunburst Oil & Rifining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932); *First of McAlester Corp. v. Oklahoma Tax Comm'n*, 1985 OK 52, ¶ 21, 709 P.2d 1026, 1033. The decision in this case establishes a new principle of law which was not foreshadowed until the Attorney General issued his opinion and the Administrator sent notification that he was going to enforce the Attorney General's opinion. See, *First of McAlester*, 1985 OK 52 at ¶ 24, 709 P.2d at 1034. We find no hardship or inequity in applying this decision to refinancing agreements entered into after the Administrator gave notice on March 3, 1997. After the letter of enforcement was sent, lenders were on notice that the lesser charges of subsection 3–508A might apply to refinancing of subsection 3–508B loans. See, *id.*, at ¶ 30, 709 P.2d at 1035.

**46.** Title 14A O.S.1991 § 1–102, see note 38, supra.