2013 OK CIV APP 5

**The STATE of Oklahoma, Plaintiff/Appellant,**

v.

**Barney NASH, a/k/a Rennard Moore, a/k/a Herman Nash, Defendant,**

and

**Howard McClanahan, Real Party in Interest/Appellee.**

No. 109,291.

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 10, 2012.

David A. Cincotta, Assistant District Attorney, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Ronald L. Wallace, The Wallace Law Firm, Oklahoma City, Oklahoma, for Real Party in Interest/Appellee.

DEBORAH B. BARNES, Presiding Judge.

¶ 1 Plaintiff/Appellant The State of Oklahoma (the State) appeals the trial court's Order filed on March 17, 2011. In its Order, the trial court found that Real Party in Interest/Appellee Howard McClanahan (Bondsman) "shall not be responsible for paying the $1,055.93 incurred by the Oklahoma County Sheriff's Office for the transportation of Defendant" Barney Nash, a/k/a Rennard Moore, a/k/a Herman Nash (Defendant) back to Oklahoma County, and found, instead, that the transportation costs "shall be assessed as costs to Defendant...." Based on our review of the facts and applicable law, we reverse and remand with instructions to the trial court to enter an order directing Bondsman to pay the travel expenses.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On December 6, 2009, at around 2 a.m., Defendant was arrested and transported to the Oklahoma County Jail.[1] On the same date, Bondsman posted bond in the amount of $24,500 for Defendant,[2] and Defendant was released.[3]

---

1. R., p. 5.

2. R., p. 7.

3. January 18, 2011 Transcript (Tr.), p. 4.

4. R., p. 8.

¶ 3 On January 4, 2010, Defendant appeared for an arraignment hearing. However, charges had not yet been filed and Defendant was ordered to reappear on February 2, 2010, for an arraignment hearing.

¶ 4 On the evening of January 4, 2010, Defendant was arrested by federal authorities and transported to the jail in Grady County, Oklahoma. On January 8, 2010, Defendant was transported by federal authorities from Grady County to Grayson County, Kentucky.

¶ 5 Oklahoma County filed charges against Defendant on January 19, 2010, in Case No. CF–2010–294, the case from which this appeal arises. However, because Defendant had been apprehended by federal authorities and transported out of state, Defendant failed to appear at the February 2, 2010 arraignment hearing. The trial court, unaware of the reason for Defendant's failure to appear, ordered the bond forfeited. The trial court's order forfeiting Defendant's bond was memorialized in the "Order and Judgment of Forfeiture" filed on February 5, 2010.[4]

¶ 6 On February 24, 2010, Bondsman, through an agent, filed a "Return of Defendant to Custody" form, informing the trial court that Defendant was in custody in Grayson County, Kentucky.[5] An "Affidavit of Intent" was also filed on the same date, is signed by an agent of Bondsman, and states that the signee "*agree[s] to pay all expenses incurred* by the Oklahoma County Sheriff's Office, for the extradition of [Defendant] from anywhere in the United States of America to ... Oklahoma County...."[6] It further states, "I agree that upon notification of [Defendant's] apprehension that I will make immediate arrangements with the Oklahoma County Sheriff's Office to post the appropriate funds for extradition costs...."

¶ 7 On October 4, 2010, the State filed an application for writ of habeas corpus ad prosequendum to bring Defendant from the out-

---

5. R., p. 10.

6. R., p. 9.

of-state federal penitentiary back to Oklahoma County for a hearing in Case No. CF–2010–294.[7] The expenses incurred by the Oklahoma County Sheriff's Office for transporting Defendant back to Oklahoma County totaled $1,055.93.

¶ 8 Bondsman filed a motion to determine the liability for the transportation costs, and a hearing was held in January of 2011. At the hearing, the State argued it should not have to "foot the bill" to pay for transportation costs when the Defendant "would have been in custody here for the arraignment date had the bond not been posted to begin with."[8] Bondsman's counsel argued that Bondsman should not have to pay the transportation costs because Defendant did not "skip town." Rather, Defendant was where he was supposed to be, but was arrested and transported by federal authorities out of state.

¶ 9 Bondsman's counsel suggested at the hearing that the trial court "just assess the travel expenses to [D]efendant as court costs" and let "[D]efendant be responsible for it."[9] Although Defendant does not appear to have been represented at the hearing, the trial court adopted this suggestion, stating, "I'm going to assess the cost to [Defendant] as opposed to [Bondsman]."[10] In the Order filed on March 17, 2011, the trial court found that "Bondsman shall not be responsible for paying the $1,055.93 incurred by the Oklahoma County Sheriff's Office for the transportation of Defendant" back to Oklahoma County, and found, instead, that the transportation costs "shall be assessed as costs to Defendant...." From this Order, the State appeals.

7. R., pp. 12–14.

8. Tr., p. 6.

9. Tr., pp. 14–15.

10. Tr., p. 16.

11. Standing may be raised as an issue at any stage of the judicial process by any party or by the court sua sponte. *J.P. Morgan Chase Bank Nat. Ass'n v. Eldridge*, 2012 OK 24, ¶ 2 n. 1, 273 P.3d 62, 64 n. 1.

12. Although the trial court found Defendant, rather than the State, responsible for the pay-

¶ 10 In an order filed on October 11, 2012, this Court ordered the State to show cause why this appeal should not be dismissed for lack of standing.[11] The State filed a response to the show cause order on October 26, 2012. We conclude that the State has standing to appeal the trial court's Order.[12] Therefore, this case may proceed to the merits.[13]

## STANDARD OF REVIEW

¶ 11 The issue presented on appeal is one of statutory interpretation. Statutory interpretation requires a *de novo* review standard. *Barnhill v. Multiple Injury Trust Fund*, 2001 OK 114, ¶ 8, 37 P.3d 890, 894. The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. *Ledbetter v. Alcoholic Beverage Laws Enforcement Comm'n*, 1988 OK 117, ¶ 7, 764 P.2d 172, 179. If a statute "is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction, the statute will be accorded the meaning as expressed" by the language used. *Berry v. State ex rel. Okla. Pub. Employees Ret. Sys.*, 1989 OK 14, ¶ 6, 768 P.2d 898, 899–900 (citation omitted).

It is presumed "the Legislature expressed its intent in the statute ... and ... intended what it expressed." When the language of the statute is plain, it will be followed without further inquiry. When further inquiry is needed, this court is "not free to rewrite the statute.... [T]he sole function of the courts—at least where the disposition [called for] by the text is not absurd—

ment of the travel expenses, the State has "a legally cognizable interest in the outcome of the tendered controversy." *Knight ex rel. Ellis v. Miller*, 2008 OK 81, ¶ 11, 195 P.3d 372, 375 (citation omitted). The State has incurred the costs of Defendant's transportation and was a party to the proceedings below. The adverse effect of the trial court's Order on the State is sufficiently "direct, substantial and immediate...." *Toxic Waste Impact Grp., Inc., v. Leavitt*, 1994 OK 148, ¶ 9, 890 P.2d 906, 911 (citation omitted).

13. "Only if standing exists must the case proceed to the merits...." *Id.* ¶ 9, 890 P.2d at 911 (citation omitted).

is to enforce it [the statute] according to its terms." Courts must "if possible, construe a statute to give every word some operative effect" and vigorously "resist reading words or elements into a statute that do not appear on its face." The legislature expresses its purpose by words. "It is for [this court] to ascertain [the meaning of these words]—neither to add nor to subtract, neither to delete nor to distort." *Okla. City Zoological Trust v. State of Okla. ex rel. Pub. Employees Relations Bd.*, 2007 OK 21, ¶ 6, 158 P.3d 461, 464 (footnotes omitted).

## ANALYSIS

¶ 12 The trial court determined that Bondsman should not be responsible for the travel expenses incurred by the Oklahoma County Sheriff's Office in returning Defendant to Oklahoma County. The trial judge stated at the hearing that Defendant was where he was supposed to be at the time of his arrest by federal authorities and questioned, "how does [Bondsman] control what the Feds are doing and where they take [Defendant]?"[14] Although the State agrees that Defendant was in the proper jurisdiction at the time of his arrest by federal authorities and that he did not "skip town," the State argues that Bondsman "took risks when he entered into a contract with Defendant to post Defendant's bail. One of the risks was that Defendant would be apprehended and incarcerated in another jurisdiction, which would require payment of costs to transport Defendant back to Oklahoma County, Oklahoma."[15] The State points out that if bond had not been posted, Defendant would not have been released prior to the February 2, 2010 arraignment hearing and, consequently, would not have failed to appear.

¶ 13 The State also cites to the following statutory provisions which, it argues, require Bondsman to pay the travel expenses in this case. Title 59 O.S.2011 § 1332(C)(1) provides that following a forfeiture of a bond, the bail bondsman has 90 days from the "receipt of the order and judgment of forfei-

ture from the court clerk or mailing of the notice if no receipt is made, to return the defendant to custody." Section 1332(C)(3) defines "return to custody," in pertinent part, as an "arrest or incarceration of the defendant in any other jurisdiction, provided the bondsman has requested that a hold be placed on the defendant in the jurisdiction wherein the forfeiture lies *and has guaranteed reasonable travel expenses for the return of the defendant.*" (Emphasis added.) As a penalty for failing to pay travel expenses, § 1310(A) provides:

> The Insurance Commissioner may deny, censure, suspend, revoke, or refuse to renew any license issued under Sections 1301 through 1340 of this title for any of the following causes: ... 28. *For failing to pay travel expenses for the return of the defendant to custody once having guaranteed the expenses* pursuant to the provisions of subparagraph d of paragraph 3 of subsection C of Section 1332 of this title; ....

(Emphasis added.)

¶ 14 Furthermore, § 1327(B) provides as follows:

> If the defendant has been placed in custody of another jurisdiction, the district attorney shall direct a hold order to the official, judge or law enforcement agency where the defendant is in custody. *All reasonable expenses accrued in returning the defendant to the original court shall be borne by the bondsman who posted the bond with that court.* Upon application, the bond in the original court shall be exonerated when the hold order is placed and *upon proof of payment of expenses by the bondsman.*

(Emphasis added.)

¶ 15 Finally, § 1332(E) provides as follows:
1. If the defendant's failure to appear was the result of the defendant's death or of being in the custody of a court other than the court in which the appearance was scheduled, forfeiture shall not lie. Upon proof to the court that the bondsman paid the order and judgment of forfeiture

---

14. Tr., p. 8.

15. The State's Brief–in–Chief, p. 10.

without knowledge that the defendant was deceased or in custody of another court on the day the defendant was due to appear, *and all expenses for the defendant's return have been paid by the bondsman,* the bondsman's property shall be returned.

2.  Where the defendant is in the custody of another court, the district attorney or municipal attorney shall direct a hold order to the official, judge, court or law enforcement agent wherein the defendant is in custody; provided, that *all expenses accrued as a result of returning the custody of the defendant shall be borne by the bondsman.*

(Emphasis added.)

¶ 16 Accordingly, when a defendant is in the custody of another court or jurisdiction, as occurred in this case, all reasonable expenses accrued as a result of returning the defendant to the original court shall be borne by the bondsman. §§ 1327(B), 1332(E). When a bondsman, as in this case, guarantees the payment of travel expenses, the Insurance Commissioner may deny, censure, suspend, revoke, or refuse to renew that bondsman's license for failure to pay. § 1310(A). Based on these statutory provisions, we conclude that it is the Legislature's clear intent that Bondsman be required to pay the travel expenses in this case. Because the intent of the Legislature is plain, it will be followed without further inquiry.

*Okla. City Zoological Trust,* 2007 OK 21, ¶ 6, 158 P.3d at 464.[16] Consequently, we reverse the trial court's Order and remand with instructions to enter an order directing Bondsman to pay the travel expenses.

### CONCLUSION

¶ 17 Based on our review of the facts and applicable law, we reverse the trial court's Order finding that "Bondsman shall not be responsible for paying the $1,055.93 incurred by the Oklahoma County Sheriff's Office for the transportation of Defendant" back to Oklahoma County, and finding instead that the transportation costs "shall be assessed as costs to Defendant...." We remand with instructions to the trial court to enter an order directing Bondsman to pay the travel expenses incurred by the Oklahoma County Sheriff's Office.

¶ 18 **REVERSED AND REMANDED WITH INSTRUCTIONS.**

FISCHER, C.J., and WISEMAN, J., concur.

---

16.  We note that Bondsman cites to § 1332(C)(5), which states that "[t]he court may, in its discretion, vacate the order of forfeiture and exonerate the bond where good cause has been shown for: a. the defendant's failure to appear...." However, § 1332(C)(5) does not address the specific issue of whether the State, Defendant, or Bondsman in this case should be held responsible for the travel expenses.