**Stephen J. MERRILL, Appellant,**

v.

**OKLAHOMA TAX COMMISSION,**
Appellee.

**No. 70649.**

Supreme Court of Oklahoma.

April 28, 1992.

Rehearing Denied June 11, 1992.

Stephen J. Merrill, Merrill & Merrill, and Lonnie Ray Hardin, Tulsa, for appellant.

Joe Mark Elkouri, Gen. Counsel, Gladys E. Cherry, Dorothy J. Lindsey, Asst. Gen. Counsel, and David Hudson, Gen. Counsel, Dorothy J. Lindsey, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee.

OPALA, Chief Justice.

The questions to be decided are: (1) Before the 1988 amendment[1] of the Uniform Disposition of Unclaimed Property Act,[2] were all records collected by the Oklahoma Tax Commission [Commission] in discharge of its responsibility under that act subject to disclosure mandated by the Oklahoma Open Records Act?[3] (2) Are the trial court's decisions that (a) the Commission's response to the plaintiff's record request was prompt and (b) its copy fees reasonable clearly contrary to the weight of the evidence? (3) Is the plaintiff entitled to attorney's fees? We answer all three questions in the negative.

## I.

### THE ANATOMY OF LITIGATION

In 1987 Stephen J. Merrill, [Merrill], an attorney, sued the Commission in the District Court, Oklahoma County. He contended the Oklahoma Open Records Act [Open Records Act][4] entitles him to copies of *all records generated by the Commission in the discharge of its duties under the Uniform Disposition of Unclaimed Property Act* [Unclaimed Property Act][5] rather than *only those the Commission considers "public."* Merrill also urged the Commission's response to his request for public records was too slow and its copy fees excessive.[6] He sought relief with at-

---

**1.** 60 O.S.Supp.1988 § 661(H). This section is identical in substance to 60 O.S.1991 § 661(G), whose terms are:

"Reports filed by a holder shall remain confidential except for that information required to be subject to public inspection pursuant to the Uniform Unclaimed Property Act (1981)."

All statutory citations in this opinion refer to the law in effect when the action arose. The Uniform Disposition of Unclaimed Property Act was recodified in 1991 as the Uniform Un-claimed Property Act. Other amendments are not pertinent to the issues in suit.

**2.** 60 O.S.1981 §§ 651 *et seq.*

**3.** 51 O.S.Supp.1985 §§ 24A.1 *et seq.*

**4.** *See supra* note 3.

**5.** *See supra* note 2.

**6.** Plaintiff wanted a duplicating company to pick up the microfiche master or a work copy of

torney's fees. After a bench trial, the *nisi prius* court held that (a) all unclaimed property records are confidential, except those the Unclaimed Property Act requires to be published, (b) the Commission's response time and proposed copy fees were reasonable and (c) the plaintiff's quest for attorney's fees is legally unsupportable.

the "Income Tax Filers Index" (an annual list of approximately 1.3 million names of those who file income tax returns), make duplicates, and return the original to the Commission's office. He also wanted the Commission to transfer the Unclaimed Property Division's "Desk List" (all records the Commission is required to make public by the Unclaimed Property Act) to a computer-readable medium. *See infra* Section IV.

7. See 60 O.S.Supp.1982 § 661, whose pertinent terms are:

"A. *Every person holding funds or other property* tangible or intangible, *presumed abandoned* under the Uniform Disposition of Unclaimed Property Act *shall report to the Oklahoma Tax Commission with respect to the property* as hereinafter provided.
"B. The report shall be verified and shall include:
"1. The name, if known, and last-known address, if any, of each person appearing from the records of the holder to be the owner of property of the value of Fifty Dollars ($50.00) or more presumed abandoned under the Uniform Disposition of Unclaimed Property Act;
"* * *
"3. The nature and identifying number, if any, or description of the property and the amount appearing from the records to be due ...; and
"4. The date when the property became payable, demandable or returnable, and the date of the last transaction with the owner with respect to the property.
"* * *
"D. *The report shall be filed before November 1 of each year* as of September 1 next preceding.... The Oklahoma Tax Commission may postpone the reporting date upon written request by any person required to file a report.
"* * *" (Emphasis added.)

8. See 60 O.S.1981 § 663, whose pertinent terms are:

"Every person who has filed a report ... *shall* within twenty (20) days after the time specified in Section 12 for claiming the property from the holder ... *pay or deliver to the Commission all abandoned property specified in the report* after first deducting therefrom expenses incurred in the mailing of notices

## II.

## THE UNCLAIMED PROPERTY ACT

The Unclaimed Property Act provides a comprehensive scheme for the report,[7] collection,[8] maintenance,[9] distribution[10] and escheat[11] of tangible and intangible property considered abandoned by its definitional text. All property presumed abandoned

required by Section 11(e). * * *" (Emphasis added.)

9. See, e.g., 60 O.S.1981 § 668 and 60 O.S.Supp. 1984 § 669, whose pertinent terms are:

"[§ 668] There is hereby created in the State Treasury the 'Unclaimed Property Fund,' the principal of which shall constitute a trust fund for persons claiming any interest in any property delivered to the state under this act.... All funds received under this act ... *shall forthwith be deposited by the Oklahoma Tax Commission in the Unclaimed Property Fund....*
"* * *
"[§ 669] *The Oklahoma Tax Commission is hereby vested with authority and the responsibility for the control and management of all monies in the Unclaimed Property Fund....* It shall be the duty of said Commission to take such steps as may be necessary to preserve the principal of monies accruing to the Unclaimed Property Fund *as a trust* for persons claiming any interest in any property delivered to the state pursuant to the provisions of the Uniform Disposition of Unclaimed Property Act." (Emphasis added.)

10. See 60 O.S.1981 § 675, whose pertinent terms are:

"(a) The Oklahoma Tax Commission shall consider any claim filed under this act....
"(b) Upon approval by the Oklahoma Tax Commission *the claim shall be paid forthwith from the Unclaimed Property Fund.* * * *" (Emphasis added.)

11. See 60 O.S.Supp.1984 § 670, whose pertinent terms are:

"The Oklahoma Tax Commission shall determine, from time to time, what amount of unclaimed property in its custody should be retained as a reserve....
"* * *
"The Commission, after having found and determined the reserve necessary ... shall pay all amounts in its custody in excess of said necessary reserve into the State Treasury to the credit of the General Revenue Fund.
"*When monies are deposited to the credit of the General Revenue Fund, all rights of any owner of unclaimed property to resort against the money so paid* into the General Revenue Fund *shall terminate....*" (Emphasis added.)

**638**

must be reported [12] and, if not earlier claimed by the owner, delivered to the Commission by the holder.[13] Holders include banks,[14] life insurance companies,[15] utilities,[16] business associations,[17] fiduciaries [18] and the courts.[19]

If the Commission has reason to believe that someone has failed to report "aban-

doned property," it has authority to examine that person's records.[20] The statute empowers the Commission to compel delivery of property [21] and provides penalties for failure to file reports or perform other duties required by the act.[22] Section 681

**12.** See 60 O.S.Supp.1982 § 661, *supra* note 7.

**13.** *See* 60 O.S.1981 § 663, *supra* note 8.

**14.** *See* 60 O.S.Supp.1982 § 652, whose pertinent terms are:
"The following property held or owing by a banking or financial organization is presumed abandoned:
1. Any demand, savings, or matured time deposit made in this state with a banking organization ... unless the owner has, within seven (7) years:
 a. increased or decreased the amount of the deposit ... or,
 b. corresponded in writing with the banking organization concerning the deposit, or
 c. otherwise indicated an interest in the deposit as evidenced by a memorandum on file with the banking organization; * * * "

**15.** *See* 60 O.S.Supp.1982 § 653, whose pertinent terms are:
"* * * B. 'Unclaimed funds', as used in this section, means all monies held and owing by any life insurance corporation unclaimed and unpaid for more than seven (7) years after the monies became due and payable as established from the records of the corporation under any life or endowment insurance policy or annuity contract which has matured or terminated. * * *"

**16.** *See* 60 O.S.Supp.1982 § 654, whose pertinent terms are:
"The following funds held or owing by any utility are presumed abandoned:
"Any deposit made by a subscriber with a utility to secure payment for ... utility services to be furnished in this state, less any lawful deductions, that has remained unclaimed by the person appearing on the records of the utility entitled thereto for more than seven (7) years after the termination of the services for which the deposit ... was made."

**17.** *See* 60 O.S.Supp.1985 § 655, whose pertinent terms are:
"Any stock or other certificate of ownership, or any dividend, profit distribution, interest, payment or principal, or other sum held or owing by a business association for or to a shareholder, certificate holder, member bondholder, or other security holder or a participating patron of a cooperative, who has not claimed it, or corresponded in writing with a business association concerning it, within seven (7) years after the date prescribed for pay-

ment or delivery, is presumed abandoned. * * * "

**18.** *See* 60 O.S.Supp.1982 § 656, whose pertinent terms are:
"All intangible personal property and any income or increment thereon held in a fiduciary capacity for the benefit of another person is presumed abandoned unless the owner has, within seven (7) years after it becomes payable or distributable, increased or decreased the principal, accepted payment of principal or income, corresponded in writing concerning the property, or otherwise indicated an interest as evidenced by a memorandum on file with the fiduciary. * * * "

**19.** *See* 60 O.S.1981 § 657, whose pertinent terms are:
"All intangible personal property held for the owner by any court, public corporation, public authority, or public officer of this state, or a political subdivision thereof, that has remained unclaimed by the owner for more than three (3) years is presumed abandoned."

**20.** See 60 O.S.1981 § 678, whose pertinent terms are:
"If the Commission has reason to believe that any person has failed to report property in accordance with this act, it may make a demand by certified mail ... that such report be made and filed with the Commission.
"* * *
"The Commission may at reasonable times and upon reasonable notice examine the records of any person *if the Commission has reason to believe that such person has failed to report property that should have been reported pursuant to this act.*" (Emphasis added.)

**21.** *See* 60 O.S.1981 § 679, whose pertinent terms are:
"(a) If any person refuses to deliver property to the Commission as required under this act, the Commission shall bring an action in a court of appropriate jurisdiction to enforce such delivery. * * * "

**22.** *See* 60 O.S.1981 § 680, whose terms are:
"(a) Any person who willfully fails to render any report or perform other duties required under this act shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) for each day such report is withheld.
"(b) Any person who willfully refuses to pay or deliver abandoned property to the Okla-

authorizes the Commission to make rules and regulations necessary to carry out the act's provisions.[23]

The statute *requires* that the Commission make *certain data public.*[24] After this suit was filed, the pertinent text was amended to provide that, except for *the public information, "[r]eports filed by a holder [of abandoned property] shall remain confidential."*[25]

## III.

## THE CONTROVERSY

The question here is whether, before the 1988 amendment of the Unclaimed Property Act mandated their confidentiality, unclaimed property reports to the Commission were required to be disclosed by the Open Records Act. Merrill contends the Open Records Act allows access to all un-

claimed property division records because they are not *specifically required by law to be confidential.*[26] The Commission argues that because of its very nature information concerning individuals must be treated as confidential. The data include financial reports, social security numbers, monetary amounts, property descriptions and other identifying information. According to the Commission, without an assurance of confidentiality, compliance would be difficult to secure. In response to these concerns, the Commission passed Regulation No. LX–8[27] making confidential all records in its custody except those made public by the unclaimed property statute.[28]

## IV.

## CONFIDENTIALITY OF THE RECORDS

In *Lincoln Bank and Trust Company v. Oklahoma Tax Commis-*

homa Tax Commission as required under this act shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) or imprisonment for not more than six (6) months, or both, in the discretion of the court."

23. The terms of 60 O.S.1981 § 681 are: "The Oklahoma Tax Commission is hereby authorized to make necessary rules and regulations to carry out the provisions of this act."

24. *See* 60 O.S.Supp.1983 § 662, whose pertinent terms are:
"A. Within one hundred twenty (120) days from the filing of the report required by Section 661 of this title, the Oklahoma Tax Commission shall cause notice to be published....
"B. The published notice shall ... contain:
1. The names in alphabetical order and last-known addresses, if any, of persons listed in the report....
" * * * "

25. *See* 60 O.S.Supp.1988 § 661(H), *supra* note 1.

26. *See* 51 O.S.Supp.1986 § 24A.5. Its pertinent terms are:
"All records of public bodies and public officials shall be open to any person for inspection, copying, and/or mechanical reproduction during regular business hours; provided:
"1. The Oklahoma Open Records Act does not apply to records specifically required by law to be kept confidential including:
a. records not discoverable under state law such as material prepared in anticipation of litigation or trial;
" * * * "
Plaintiff argues that the Open Records Act controls over the Unclaimed Property Act and the Commission's administrative interpretation

of it. He contends the confidentiality issue should be decided by resort to statutory rules of construction: (a) one which holds that a special statute overrides a general statute, (b) one that gives precedence to the most recent statute, and (c) one that would give weight to the title of the Open Records Act. For the reasons to be explained, we find no need for resort to rules of statutory construction. The Open Records Act contains an exemption applicable to this case.

27. LX–8 was not formally admitted into evidence at trial, but was treated at *nisi prius* as being in evidence and referred to by all the parties. It is hence regarded as part of the record. *Reeves v. Agee,* Okl., 769 P.2d 745, 756 (1989).

28. The pertinent terms of Regulation No. LX–8 are:
"The Oklahoma Tax Commission shall consider confidential, reports filed by holders, the names of holders that have been audited, records and files of holders and information secured therefrom, created by, received by, or coming into the custody of the Oklahoma Tax Commission as a result of any audit, any protests filed by holders to examination findings, claimants' applications and documents submitted to support a claim, and information discovered by the Oklahoma Tax Commission concerning claims and claimants....
"* * *
"Confidential information may be disclosed as required by Sections 662, 668, 675 and 683 of the Uniform Disposition of Unclaimed Property Act or as necessary for the proper administration of this Act."

*sion*[29] we held financial information obtained from a *bank* in the course of enforcing the Unclaimed Property Act is not subject to the disclosure requirements of the Open Records Act.[30] This is so because the Financial Privacy Act[31] "clothes a bank customer's records with a privacy interest"[32] and the Open Record Act excepts "records specifically required by law to be kept confidential."[33] *Lincoln's* teaching provides us with but a partial solution of this case because Merrill seeks not only bank records collected by the Commission but those of insurance companies, oil and gas companies,[34] county clerks and other classes of holder. In *Tulsa Tribune Co. v. Okl. Horse Racing Com'n*[35] we recognized that an affected agency has *authority to make the initial determination whether its records are exempt from the Open Records Act.*[36] That agency decision may, of course, be reviewed by the district court in a suit for injunctive and/or declaratory relief.[37] Although both the agency and the reviewing court must consider the Open Records Act's intention to favor disclosure of information over its withholding,[38] if the release of information in a public body's custody would invade an individual's privacy[39] or damage an affected party's commercial interests, the Section 24A.5(1)a. exemption would apply.[40]

 The Commission determined that except for the Income Tax Filers Index and the Unclaimed Property Division's Desk List, the documents sought by Merrill contain financial information about individuals and holders that may not be released.[41] The district court agreed with this position. Because when the trial court considered Merrill's suit for declaratory and injunctive relief it was sitting in equity, *the standard of review applicable to the ruling is whether it is clearly contrary to the weight of the evidence.*[42] While in a chan-

**29.** Okl., 827 P.2d 1314 (1992).

**30.** *Lincoln, supra* note 29 at 1321 & n. 38. We noted in *Lincoln, supra* at 1322 that in so far as records contain information on abandoned property alone, no privacy interest exists because the property is presumed abandoned by law. There is nothing in the record to indicate that the data the plaintiff seeks is of this nature.

**31.** 6 O.S.1981 §§ 2201 *et seq.*

**32.** *Lincoln, supra* note 29 at n. 38.

**33.** 51 O.S.Supp.1986 § 24A.5.1. *See supra* note 26 for its terms.

**34.** The federal district court declared in *American Petrofina Co. of Texas v. Nance,* 697 F.Supp. 1183 (W.D.Okla.1986), affirmed, 859 F.2d 840 (10th Cir.1988), that the provisions of 60 O.S.Supp.1984 §§ 658.2–658.6 are unconstitutional. These sections of the Unclaimed Property Act provided for the custodial taking, after one year, of undistributed proceeds generated by mineral production. They were found contrary to the scheme of priorities established in *Texas v. New Jersey,* 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965), for the states which provide for taking of unclaimed property.

**35.** Okl., 735 P.2d 548 (1987).

**36.** *See Tulsa Tribune, supra* note 35 at 552.

**37.** *See Tulsa Tribune, supra* note 35 at 552. *See also* 51 O.S.Supp.1985 § 24A.17(B), whose pertinent terms are:

"B. Any person denied access to a record of a public body or public official may bring a civil suit for declarative and/or injunctive relief and, *if successful, shall be entitled to reasonable attorney fees....*" (Emphasis supplied.)

**38.** *See Tulsa Tribune, supra* note 35 at 555.

**39.** *See Alva State Bank and Trust Co. v. Dayton,* Okl., 755 P.2d 635 (1988), where we recognized the confidential status of personal financial records.

**40.** *See Tulsa Tribune, supra* note 35 at 554. *See also supra* note 26 for the terms 51 O.S.Supp. 1986 § 24A.5(1)(a).

**41.** No one disputes that Merrill *has always had access to the public documents known as the Income Tax Filers Index and the Unclaimed Property Division's Desk List.* These two records are described *supra* note 6. As explained in that note, Merrill wanted these two documents furnished on microfilm and on computer tape rather than by photocopy. In June 1987 the Commission offered to furnish a microfilm copy of the index and a computer tape of the list. Merrill then questioned the copy cost proposed to be charged for these items. *See infra* Section IV.

**42.** *Sandpiper North Apartments v. Am. Nat. Bank,* Okl., 680 P.2d 983, 991 (1984); *Amoco Production Co. v. Lindley,* Okl., 609 P.2d 733, 745 (1980); *Regal v. Riegel,* Okl., 463 P.2d 680, 683 (1970).

cery case an appellate court may weigh the evidence, it will neither disturb the trial court's findings nor its decree unless the chancellor's decision fails to pass muster under this well-known standard of review.[43] Absent the standard's breach, the appellate court must indulge in the presumption that the decree is correct.[44]

Our review of the record yields ample proof in support of the *nisi prius* decision. A witness testified that the Commission considers confidential social security numbers, holders' federal identification numbers, and the names of estate administrators and heirs. It withholds from the public lease owner as well as other financial records, including bank account numbers. Since audits are frequently protested, the release, during a contest, of even an owner's name and address could create problems. According to a Commission witness, approximately one hundred ten items of information about either the holder or owner of unclaimed property are part of the Commission's new data base. In sum, the evidence establishes privacy claims and concerns that *compel confidentiality* under the *Tulsa Tribune* guidelines. *This is so because the reports contain individual financial information of the type that would ordinarily be subject to a court's protective order because it has the potential to harm unclaimed property reporters' commercial interests.* Merrill presented nothing that would outweigh these privacy considerations.[45] *If Merrill's request had come seventeen months later, the records he now seeks would undoubtedly be deemed confidential by statutory command.* The Commission satisfactorily met its burden of showing that all unclaimed property records not statutorily re-

quired to be made public are exempt from the purview of the Open Records Act.

## V.

### DISPUTE OVER THE PUBLIC RECORDS

■ Merrill made a *"media-specific"* demand for certain *public* records. He pressed for a *microfilm copy* of the "Income Tax Filers Index" [the Index], an annual record of the names and addresses of approximately 1.3 million persons who file tax returns. He also wanted a copy of the Unclaimed Property Division's "Desk List" [the Desk List] on a "computer-readable" medium. The list contains information the Unclaimed Property Act requires to be published. *Merrill knew these two items were available for inspection and copying at the office of the Oklahoma Tax Commission during regular business hours and had, in fact, used the Index.* After several months of correspondence and phone conversations with Merrill, the Commission quoted fees for microfiche copies of Index and a computer-readable copy of the Desk List. Merrill contends the offer came too late and the proposed copying charges were excessive. The Commission responds that because Merrill's request for microfilm and computer-tape copies was so *unique*, its legal staff and computer services division had to decide whether compliance was possible, and if so, the procedure to be used in providing the services and its costs. The *nisi prius* conclusion was that under all of the revealed circumstances the Tax Commission did act promptly in giving Merrill access to the records and that its proposed copy charges were not excessive.[46]

**43.** *Carpenter v. Carpenter*, Okl., 645 P.2d 476, 480 (1982); *Snow v. Winn*, Okl., 607 P.2d 678, 680–681 (1980); *Harrison v. Eaves*, 191 Okl. 453, 130 P.2d 841, 844–845 (1942); *Wahby v. Renegar*, 199 Okl. 191, 185 P.2d 184, 185 (1947).

**44.** *Carpenter, supra* note 43 at 480.

**45.** Section IV, *infra*, will detail Merrill's claim that he wanted to act as a private attorney general to find out if the Tax Commission was properly administering the Unclaimed Property Act. The trial court discounted Merrill's testimony and found that he sought access to the documents *solely for commercial purposes.*

**46.** Merrill argues that the trial court decided this case on facts and issues patterned after *Lincoln, supra* note 29. When this case came for trial, the *Lincoln* judge had held void the Tax Commission's regulation LX–8, but the appeal had not been decided. We are convinced that the *nisi prius* decision in this case was not improperly influenced by the *nisi prius* outcome in *Lincoln.*

A review of the record is necessary for our decision on whether this trial court's conclusion is clearly contrary to the weight of the evidence.[47] Merrill testified his initial inquiry to the Income Tax Division was made November 25, 1987; its response came on December 29, 1987. At about the same time he wrote the Management Information Systems [MIS] Director requesting a computer-readable copy of the Desk List. The Director notified him that he had forwarded the letter to the Unclaimed Property Division. Both divisions later referred Merrill's letters to the Commission's legal department. Written responses indicate both the Commission's willingness to honor the public-records requests and these records' availability in the Commission office during normal business hours. Merrill concedes he had access to the records but never made any copies. The Commission's witness testified that this was the first and only time the Commission had received a request for *computer-readable* copies and there is a five-year backlog in developing computer jobs and systems. To comply with Merrill's request, the Director would have to divert staff from their regular jobs. Nothing adduced in these proceedings demonstrates the Commission engaged in dilatory practices. Ample proof supports the *nisi prius* conclusion that the agency's response-time was reasonable.

■ The Commission informed Merrill that it would provide a microfiche copy of the Index for $350.00 and a computer tape copy of the Desk List for $258.00. The charges include labor and administrative costs. The Open Records Act permits such fees to be charged if the request is "solely for commercial purposes" or would cause "excessive disruption of the public body's

essential functions."[48] According to the trial court, both factors were present here. Merrill contends his *uncontroverted* testimony that he intended to conduct an independent audit of the Commission to detect any wrongdoing on the agency's part mandates a finding that the record request is not *solely* for commercial purposes.

If it is insufficient to induce belief under all the facts and circumstances, the trier of facts is not bound by the testimony of interested parties, even when it is undisputed by other proof.[49] It is within the trial court's province to weigh the witnesses' credibility and assess the effect and value their testimony is to be given. Even if upon the evidence presented, the trial court might have been equally correct in reaching a different conclusion, the judgment is nonetheless free from infirmity.[50] When Merrill was first asked his reason for requesting the documents, he wrote that he wanted to use them in his law practice. He testified later that he intended to become a "private attorney general" and conduct an audit of approximately 1.3 million names on the Index. He planned to use the information about the approximately 125,000 persons who may own abandoned property to test the Commission's job performance. The trial court's conclusion that Merrill intended to use the information solely for commercial purposes has ample evidentiary support.

■ The Commission's witness testified that the copy charge was based upon the cost of materials *cum* labor needed for providing the computer program and service to produce the requested data. Because of the heavy work-load, it would be disruptive of the Commission's day-to-day critical functions to pull someone off their

**47.** *Sandpiper, supra* note 42 at 991; *Carpenter, supra* note 43 at 480.

**48.** 51 O.S.Supp.1986 § 24A.5.3. Its pertinent terms are:
 "... [I]f the request is:
 a. solely for commercial purpose; or
 b. clearly would cause excessive disruption of the public body's essential functions; then the public body may charge a reasonable fee to recover the direct cost of document search."

**49.** *Chapman v. Chapman,* Okl., 400 P.2d 831, 837 (1965); *Allied Reserve Life Insurance Company v. Pierson,* Okl., 357 P.2d 205, 214 (1960); *Alexander v. Gee,* Okl., 352 P.2d 915, 920 (1960).

**50.** *Carpenter, supra* note 43 at 480; *Wahby v. Renegar, supra* note 43, 185 P.2d at 185; *Kunze v. Wilkerson,* Okl., 426 P.2d 340, 342 (1967); *Brown v. Greever,* Okl., 379 P.2d 689, 691 (1963).

job to fill Merrill's request for a computer tape. According to the record, many persons make copies of Commission records without incurring cost by using their own copying materials in the Commission office. From our examination of the record we cannot say the decision that the costs quoted to Merrill are reasonable is clearly contrary to the weight of the evidence. Since the Open Records Act provides for attorney's fees only to those who *successfully challenge the agency's denial of access to a public record,* Merrill's claim of error in the district court's failure to award him attorney's fees is meritless.[51]

The trial court's judgment is affirmed.

HODGES, V.C.J., and HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur;

LAVENDER, J., concurs in part and dissents in part;

SIMMS and KAUGER, JJ., concur in result.

**51.** 51 O.S.Supp.1985 § 24A.17B. *See supra* note 37 for its pertinent terms.