Question Submitted by: The Honorable Mike Ritze, State Representative, District 80
2015 OK AG 2
Decided: 05/04/2015
Oklahoma Attorney General Opinions

Cite as: 2015 OK AG 2, __ __

 

¶0 This office has received your request for an official Attorney General 
Opinion in which you ask, in effect, the following questions:
1. Does the 
State Treasurer have legal authority to keep information regarding unclaimed 
property confidential under the Uniform Unclaimed Property Act or the Oklahoma 
Open Records Act in response to a disclosure request?
2. What information 
obtained in the course of the State Treasurer's administration of the Uniform 
Unclaimed Property Act may or must be kept confidential by law?
3. Does the 
State Treasurer have legal authority under the Uniform Unclaimed Property Act to 
adopt administrative rules that define or limit the scope of confidentiality 
accorded to information regarding unclaimed property?
4. May the State 
Treasurer share otherwise confidential information with other entities, 
including States, in the course of administering the Uniform Unclaimed Property 
Act?
5. Does the payment of monies from the Unclaimed Property Fund affect 
any confidentiality accorded to information related to those payments?
¶1 Because your request involves the Uniform Unclaimed Property Act ("UPA"), 
60 O.S.2011 & Supp.2014, §§ 651-688, we briefly review the general purpose 
of the Act to provide some context. The UPA provides a comprehensive system for 
handling unclaimed property presumed to be abandoned. Under the statutory 
framework, individuals or entities holding unclaimed property must file reports 
on and transfer such property to the State after a defined length of time during 
which the true owner has not claimed the property or had contact with the 
holder. Id. §§ 661(A), 664(A). The periods of time run for several years 
depending on the exact type of property. E.g., 60 O.S.2011, § 652(A) (setting a period of 
five years for most types of bank accounts); id. § 657.4(A) (setting a 
period of three years for intangible property such as securities).
¶2 Once transferred to the State, the Treasurer--statutorily tasked with 
administration of the UPA, e.g., id. §§ 669, 672, 688(A)--must 
take steps to safeguard the property (or its value after sale) and make it 
available for the true owner, id. §§ 667(A), 668(A), 674(A). The UPA thus 
protects property owners by providing an orderly system for them to recover 
their property. Further, the Act ensures that the State and the general public 
receive the benefits of such property rather than allowing the holder of such 
property to reap windfalls from their customers. See 1 Am.Jur.2d 
Abandoned, Lost, & Unclaimed Property § 44 (2015) (citing Douglas 
Aircraft Co. v. Cranston, 374 P.2d 819, 821 (Cal. 1962)). Your questions 
involve the State Treasurer's obligations of confidentiality regarding 
information obtained as part of the administration of this system. We consider 
each question in turn below.

I.
The State Treasurer Does Have Legal Authority Under the Uniform 
Unclaimed Property Act and Under the Oklahoma Open Records Act to Keep Certain 
Information Confidential, Including Holder Reports, Claimant Information, 
Investigatory Reports, and any Other Information Required or Allowed to be Kept 
Confidential by Law.
¶3 You first ask whether the State Treasurer has any authority to keep 
records confidential and, if so, you also ask what information may be kept 
confidential. Your question implicates the Oklahoma Open Records Act ("Open 
Records Act"), 51 O.S.2011 & 
Supp.2014, §§ 24A.1 -24A.30, which imposes a general requirement that the 
"records" of "public bodies" and "public officials" must be made available to 
individuals who request them. 51 O.S.2011, § 24A.5. 
¶4 The Act's general disclosure requirement applies to the Treasurer. Under 
the Open Records Act, records include "all documents" whether in the form of a 
"book, paper, photograph, microfilm, data file[] created by or used with 
computer software," and more so long as they are "created by, received by, under 
the authority of, or coming into the custody, control or possession of public 
officials." 51 O.S.Supp.2014, § 
24A.3(1). "Public bod[ies]" include any "office, department, board, bureau, 
commission, . . . executive office" or other listed entity "supported in whole 
or in part by public funds or entrusted with the expenditure of public funds or 
administering or operating public property," while "public official[s]" include 
officials or employees of a public body. Id. § 24A.3(2), (4). The 
Treasurer constitutes both a public body, id. § 24A.3(2) (defining public 
body to include an "executive office . . . supported in whole or in part by 
public funds"), and a public official, id. § 24A.3(4) (defining public 
official to include "any official . . . of any public body").
¶5 Therefore, the Treasurer has a basic obligation to make disclosure 
available for all records received by the Treasurer, all records under his or 
her authority, and anything else otherwise satisfying the definition of "record" 
under the Open Records Act.[1] Despite the breadth of this basic disclosure 
obligation, however, various provisions of the Open Records Act and the UPA 
create exceptions to this general requirement and thereby authorize or even 
require confidentiality. Thus, we conclude that the Treasurer does have the 
authority to keep certain records confidential, and we discuss relevant 
categories of confidential information below.

A. Several confidentiality and publication rules of the Open Records Act 
create limitations on the State Treasurer's basic disclosure obligation.
¶6 To begin, the Open Records Act contains several exceptions that render its 
disclosure requirements inapplicable to particular records. 51 O.S.2011, § 24A.5. One set of exceptions 
includes records required by law to be kept confidential such as those protected 
by unwaived state evidentiary privileges, the minutes of executive sessions held 
by public bodies, driving records, and confidential medication information. 
See id. § 24A.5(1) ("The [Act] . . . does not apply to records 
specifically required by law to be kept confidential[.]"). The Open Records Act 
also contains numerous provisions allowing public officials to keep otherwise 
open records confidential. These provisions allow for the confidentiality of 
some information found in public employee personnel records, 51 O.S.Supp.2014, § 24A.7(A), certain personal 
notes of public officials, 51 O.S.2011, § 24A.9, and more, 
51 O.S.2011 & Supp.2014, §§ 
24A.10a, 24A.11, 24A.13-24A.16a, 24A.19, 24A.22-24A.24, 24A.27-24A.28 (creating 
various exceptions to the Act). The Open Records Act also contains a litigation 
file and investigatory report provision, which allows authorized agency 
attorneys and the Oklahoma Attorney General to keep litigation files and 
investigatory reports confidential. 51 O.S.2011, § 24A.12. To the extent authorized 
attorneys have such files on behalf of the Treasurer when administering the 
unclaimed property system, this exception would apply.

B. Several confidentiality and publication rules of the UPA also create 
limitations on the State Treasurer's basic disclosure obligation.
¶7 The UPA has several provisions affecting confidentiality and disclosure. 
First, the UPA requires that the State Treasurer arrange for publication of a 
list of the names and last known addresses of persons thought to have a claim to 
property in the system. 60 O.S.2011, § 662. Because this list must 
be published, the names and last known addresses of true owners clearly could 
not be kept confidential. This information generally comes to the Treasurer 
through reports filed by holders. The provision requiring holders to file 
reports listing unclaimed property also requires that these reports remain 
confidential except for the required-to-be-disclosed names and addresses. 
60 O.S.Supp.2014, § 
661(F). Thus, apart from the information that must be published, the reports 
themselves must remain confidential.
¶8 Second, the UPA also provides for confidentiality of certain information 
when a person files a claim in the unclaimed property system. The UPA grants the 
Treasurer the following authority:

Any information submitted by a claimant . . . may be kept confidential by the 
State Treasurer if it contains personal financial information of the claimant, 
social security numbers, birth certificates . . . or any other document which is 
confidential by statute if in the custody of another public agency or 
person.

60 O.S.2011, § 674(A). Thus, a disclosure 
request directed to records containing information about claimants could be 
rejected by the Treasurer under this statutory provision.
¶9 While claimant information must generally be kept confidential, the UPA 
also allows for the Treasurer to hold a hearing under the Administrative 
Procedures Act to determine whether a claim should be paid. Id. § 675(A). 
When the Treasurer holds such a hearing, the Treasurer must prepare a written 
document with findings of fact and a decision as to the validity of all claims 
filed and considered at the hearing. See id. The UPA specifically 
provides that the written decision becomes a "public record," lifting 
confidentiality requirements for any information included in the document. 
Id. In other words, claimant information generally remains confidential 
if it satisfies the statutory requirements, but it becomes public if included in 
a written decision on the validity of a claim after an Administrative Procedures 
Act hearing.
¶10 The UPA therefore contains several provisions dealing with 
confidentiality and disclosure that constitute part of the relevant legal 
framework for information requests. Still other legal provisions external to the 
Open Records Act and the UPA may also apply.

C. The UPA and the Open Records Act both reference external law as a source 
of confidentiality, which may further limit the State Treasurer's basic 
disclosure obligation.
¶11 Other provisions of law could require that records be kept confidential. 
The Open Records Act states that it does not apply to records where those 
records are "specifically required by law to be kept confidential"; the 
provision goes on to list examples of those laws requiring confidentiality, 
including the evidentiary privilege exception mentioned above. 51 O.S.2011, § 24A.5(1). Further, as also 
noted above, the UPA provides that information submitted by claimants "may be 
kept confidential" in circumstances involving personal financial information, 
social security numbers, or "any other document which is confidential by 
statute if in the custody of another public agency or person." 
60 O.S.2011, § 674 (emphasis added). 
External provisions of law can thus prevent disclosure directly under the Open 
Records Act or create an obligation of confidentiality under the UPA.
¶12 The Financial Privacy Act is one notable example of outside law. 6 
O.S.2011, §§ 2201-2208. That Act requires certain financial institutions to 
maintain the confidentiality of their customers' personal information in the 
face of disclosure requests from "government authorit[ies]" except upon written 
consent or a subpoena valid under the Act. Id. § 2203. The Oklahoma 
Supreme Court has interpreted this confidentiality obligation to extend to 
discovery in litigation between private parties because any judge ordering such 
discovery would qualify as a "government authority." Alva State Bank & 
Trust Co. v. Dayton, 1988 OK 44, ¶¶ 1, 5, 755 P.2d 635, 635-36. The Court has further determined 
that this statute applies to financial institutions engaged in the unclaimed 
property system: financial institutions must share information with the 
Treasurer under the Act's provisions relating to regulatory oversight and, 
without those provisions, the Treasurer would be required to obtain a subpoena. 
See Lincoln Bank & Trust Co. v. Okla. Tax Comm'n, 1992 OK 22 ¶¶ 9-14, 827 P.2d 1314, 1319-22. Although information obtained 
from covered financial institutions about presumably abandoned property would be 
handled by the Treasurer in the manner described in Part I(B) above, that 
information would remain confidential if the Act's abandonment requirements were 
not satisfied. Id. ¶¶ 11-14, 13 n.38, 827 P.2d at 1321-22, 1321 n.38. 
Hence, beyond the publication, disclosure, and confidentiality rules included in 
the Open Records Act and the UPA, any provision of law like the Financial 
Privacy Act could potentially trigger the Treasurer's confidentiality 
obligations.

II.
The State Treasurer has Legal Authority Under the UPA to Adopt 
Administrative Rules Clarifying Confidentiality Requirements Under the Act, but 
the State Treasurer May Not Adopt any Rules Contrary to Law. This Opinion Does 
Not Address Whether Current Regulations are Consistent With the UPA.
¶13 Your third question involves the authority of the State Treasurer to 
create administrative rules that interact with the confidentiality requirements 
mentioned above. The Treasurer clearly has authority under the UPA to enact 
administrative rules "necessary . . . to carry out the provisions of the [UPA] . 
. . in accordance with the Administrative Procedures Act." 60 O.S.2011, § 681. This rulemaking 
authority allows the Treasurer to clarify confidentiality rules associated with 
the administration of the unclaimed property system. In fact, the Treasurer has 
exercised this authority in the context of confidentiality, see OAC 
735:80-1-5, although this opinion does not address the validity of the 
regulations currently enacted by the Treasurer.
¶14 However, we observe that the Treasurer does not have the authority to 
enact administrative rules contrary to the Oklahoma statutes. In other words, 
the Treasurer may adopt rules regarding confidentiality in order to resolve 
ambiguity, but the Treasurer may not create confidentiality where none otherwise 
exists. A clarifying interpretation could be entitled to the "highest respect 
from the courts" if such a rule becomes the subject of litigation, but any 
interpretation by the Treasurer "must [be] reasonable and not clearly wrong." 
Indep. Fin. Inst. v. Clark, 1999 OK 43, ¶ 13, 990 P.2d 845, 851. One unreasonable interpretation of 
the UPA's confidentiality provisions would be to contravene a clear, binding 
provision of law. Hence, the Treasurer can clarify or define the confidentiality 
and disclosure rules governing his or her administration of the UPA, but the 
Treasurer may not contravene clear, binding law. This opinion does not address 
the validity of the Treasurer's current regulations.

III.
The State Treasurer has Legal Authority Under the UPA to Share 
Otherwise Confidential Information in Very Limited Circumstances Such as With 
Other States.
¶15 Your fourth question asks whether, notwithstanding an otherwise binding 
confidentiality obligation, the State Treasurer may share information with other 
entities, including other States, in order to properly administer the UPA. We 
first note that the Act must allow disclosure to persons outside the Treasurer's 
office as a matter of common sense lest the Act be reduced to a dead letter. As 
the Oklahoma Supreme Court has noted, a "statute will be given a reasonable and 
sensible construction: one that will reconcile its provisions and avoid 
inconsistencies and absurdities." City of Jenks v. Stone, 
2014 OK 11, ¶ 15, 321 P.3d 179, 183. For example, the Treasurer may have 
to engage with holders concerning otherwise confidential information as part of 
examinations, see 60 O.S.2011, § 678; the Treasurer may need 
to communicate otherwise confidential information to claimants as part of the 
process of determining whether to make payments, see id. §§ 674, 
675; the Treasurer may need to disclose information for the sake of enforcing 
provisions or rights in court, see, e.g., id. § 679(A); and the Treasurer 
may have to share confidential information with an attorney when receiving 
services from an attorney not employed within the Treasurer's own office.
¶16 Second, the Act also allows the Treasurer to make agreements to exchange 
information with other States' unclaimed property administrators in order to 
ensure that the proper government takes custody of unclaimed property. 
Id. § 683.1(A). The UPA itself contains provisions regarding which States 
should take custody of property, id. § 684.1(A). Therefore, sharing 
information with other States is crucial to the Act's effectiveness. 
Additionally, according to the United States Supreme Court, federal law preempts 
state law when a determination of custodial taking of unclaimed property between 
States must be made-resolving serious past controversies between States and 
raising the importance of proper channels of communication between States. 
See Am. Petrofina Co. v. Nance, 697 F.Supp. 1183, 1187-88 (W.D. Okla. 
1986) (citing Texas v. New Jersey, 379 U.S. 674 (1965)) (striking down 
Oklahoma's provisions governing priority as preempted by federal law). The 
Legislature thus had important reasons for ensuring that the Treasurer had the 
authority to share information with other States.
¶17 Given the breadth of confidentiality for holder reports and claimant 
information discussed above, it would also be an untenable reading of the 
statute if all of the normal rules of confidentiality applied: the Treasurer 
would essentially only be able to share with other States the name and last 
known address of an owner. This would not fulfill the objectives of information 
sharing in ensuring that the appropriate State receives custody of unclaimed 
property. The Treasurer can, therefore, share otherwise confidential information 
with other States pursuant to a valid agreement under the Act.
¶18 In light of the above considerations, the Treasurer does have the 
authority to share otherwise confidential information with a very narrow class 
of other parties. The Treasurer may communicate information to parties 
necessarily included in a reasonable application of the UPA, including the 
agency's attorneys and those parties who submit information in the first place. 
Other persons making requests would not be entitled to information under the 
Act's confidentiality obligations. Further, the Treasurer has the authority to 
share otherwise confidential information with other States' unclaimed property 
administrators.

IV.
The Payment of Monies From the Unclaimed Property Fund Does not 
Affect the Requirement of Confidentiality That has Attached to Information 
Related to the Basis For Such Payments, But a Hearing on the Validity of a Claim 
Does Result in a Decision Deemed a Public Record.
¶19 Your fifth and last question asks whether a payment from the Unclaimed 
Property Fund extinguishes confidentiality requirements attached to information 
providing the basis for payment. In some circumstances, the decision to pay a 
claim may coincide with circumstances requiring the extinguishment of 
confidentiality obligations, but in other circumstances it would not. 
Specifically, as noted above, the Treasurer may hold a hearing 
under the Administrative Procedures Act to determine whether a claim against 
unclaimed property should be considered valid. 60 O.S.2011, § 675(A). The UPA requires that 
a written decision be prepared after such hearings, and these decisions must 
become public records--they are no longer confidential. Id. But other 
information about the claimant not included in the written decision does not 
become public under the Act. See id. Further, no provision of law 
otherwise requires disclosure of the confidential information obtained from or 
about a claimant just because that claimant has had his/her property returned to 
him/her. Thus, if the Treasurer does not hold a hearing on the validity of the 
claim, nothing extinguishes the confidentiality attaching to a claimant's 
information even if the Treasurer pays the claim.

V.
Conclusion
¶20 We have discussed the Uniform Unclaimed Property Act, the Oklahoma Open 
Records Act, and other provisions of law related to your questions about 
confidentiality in the administration of the unclaimed property system. These 
provisions of law create a system that thoroughly protects the confidentiality 
of personal information while publishing the name and last known address of the 
true owners of property in order for them to have notice of the existence of 
their claims.

¶21 It is, therefore, the official Opinion of the Attorney General that:
1. The State Treasurer has legal authority under the Uniform Unclaimed 
Property Act, 60 O.S.2011 & Supp.2014, §§ 651-688, and under the Oklahoma 
Open Records Act, 51 O.S.2011 & Supp.2014, §§ 
24A.1-24A.30, to keep certain information confidential.
2. The State Treasurer has the authority to maintain the confidentiality of 
holder reports, 60 O.S.Supp.2014, § 661(F), certain claimant 
information, id. § 674(A), litigation files and investigatory reports, 
51 O.S.2011, § 
24A.12, and any other information where confidentiality would be allowed or 
required by law, id. § 24A.5.
3. The State Treasurer has legal authority under the Uniform Unclaimed 
Property Act to adopt administrative rules clarifying confidentiality 
requirements under the Act, 60 O.S.2011, § 681, but the State Treasurer 
may not adopt any rules contrary to law. This Opinion does not address whether 
current regulations are consistent with the Uniform Unclaimed Property Act.
4. The State Treasurer has legal authority under the Uniform Unclaimed 
Property Act to share otherwise confidential information in very limited 
circumstances, such as with other States. E.g., 60 O.S.2011, § 683.1.
5. The payment of monies from the Unclaimed Property Fund does not affect the 
requirement of confidentiality that attaches to information related to the basis 
for such payments, but a hearing on the validity of a claim results in a 
decision deemed a public record. 60 O.S.2011, § 675(A).

E. SCOTT PRUITT
Attorney General of Oklahoma
JARED HAINES
Assistant Solicitor General 

FOOTNOTES
[1] The Open Records Act may 
not have always so straightforwardly applied to the administration of the UPA. 
In Tulsa Tribune Co. v. Okla. Horse Racing Comm'n, 1986 OK 24, 735 P.2d 548, the Oklahoma Supreme Court interpreted 
the Open Records Act to require individuals whose information would be subject 
to release to have an opportunity to object that such a disclosure would invade 
the individual's privacy or damage the individual's commercial interests. 
Id., 1986 OK at ¶¶ 12-15, 735 P.2d at 555. The Court subsequently applied the 
Tulsa Tribune holding to the UPA. Merrill v. Okla. Tax Comm'n, 
1992 OK 53, ¶¶ 1-4, 831 P.2d 634, 640-41. However, the Tulsa Tribune 
interpretation was superseded by statute. Okla. Pub. Emp. Ass'n v. State 
ex rel. Okla. Office of Pers. Mgmt., 2011 OK 68, ¶ 4 n.5, 267 P.3d 838, 842 n.5 (citing City of Lawton v. 
Moore, 1993 OK 
168, 868 P.2d 
690). Tulsa Tribune thus has no bearing on the UPA 
today.

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1988 OK 44, 755 P.2d 635, 59 OBJ 1159, 
Alva State Bank and Trust Co. v. Dayton
Discussed

 
1992 OK 22, 827 P.2d 1314, 62 OBJ 3115, 
Lincoln Bank and Trust Co. v. Oklahoma Tax Com'n
Discussed

 
1992 OK 53, 831 P.2d 634, 63 OBJ 1291, 
Merrill v. Oklahoma Tax Com'n
Discussed

 
1993 OK 168, 868 P.2d 690, 65 OBJ 55, 
City of Lawton v. Moore
Discussed

 
2011 OK 68, 267 P.3d 838, 
OKLA. PUBLIC EMPLOYEES ASSOC. v. STATE ex rel. OKLA. OFFICE OF PERSONNEL MANAGEMENT
Discussed

 
2014 OK 11, 321 P.3d 179, 
CITY OF JENKS v. STONE
Discussed

 
1999 OK 43, 990 P.2d 845, 70 OBJ 1560, 
Independent Finance Institute v. Clark
Discussed

 
1986 OK 24, 735 P.2d 548, 57 OBJ 1323, 
Tulsa Tribune Co. v. Oklahoma Horse Racing Com'n
Discussed

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 24A.3, 
Definitions
Cited

 
51 O.S. 24A.1, 
Short Title
Discussed

 
51 O.S. 24A.5, 
Open and Confidential Records
Discussed at Length

 
51 O.S. 24A.7, 
Confidential Personnel Records of Public Body
Cited

 
51 O.S. 24A.9, 
Confidential Personal Notes and Personally Created Materials of Public Official Making Recommendation
Cited

 
51 O.S. 24A.10a, 
Confidential Market Research and Marketing Plans
Cited

 
51 O.S. 24A.12, 
Confidential Litigation Files and Investigatory Reports
Discussed

Title 60. Property

 
Cite
Name
Level

 
60 O.S. 652, 
Property Held by Banking or Financial Organizations
Cited

 
60 O.S. 661, 
Report of Abandoned Property
Discussed

 
60 O.S. 662, 
Notice and Publication of Lists of Abandoned Property
Cited

 
60 O.S. 674, 
Claim of Interest in Abandoned Property
Discussed

 
60 O.S. 675, 
Determination of Claims - Payment - Claims Against Mineral Owner's Fund
Discussed

 
60 O.S. 678, 
Failure to Report Property - Examination of Records
Cited

 
60 O.S. 681, 
Rules and Regulations - Adoption by Commission
Discussed

 
60 O.S. 683.1, 
Agreements to Exchange Information
Cited