BROWN v. THOMPSON



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BROWN v. THOMPSON

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BROWN v. THOMPSON
2018 OK CIV APP 19
413 P.3d 900
Case Number: 114822; Comp. w/115801
Decided: 11/07/2017
Mandate Issued: 03/21/2018
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2018 OK CIV APP 19, 413 P.3d 900

 

CANDACE JOAN BROWN, Plaintiff/Appellee,
v.
MARY C. THOMPSON, an Individual, Defendant/Appellant,
and
Scott Douglas Thompson and Gary S. Thompson, as Individuals, and Drakestone Farms, LLC, Edmond Farms, LLC, and Westminster Farms, LLC, as Oklahoma Limited Liability Companies, Defendants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE BARBARA G. SWINTON, JUDGE

AFFIRMED

David L. Thomas, THOMAS & TERRELL, PLLC, Oklahoma City, Oklahoma, and
Noble McIntyre, McINTYRE LAW, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee,

H. Craig Pitts, Larry E. Finn, RUBENSTEIN & PITTS, P.L.L.C., Edmond, Oklahoma, for Defendant/Appellant.

ROBERT D. BELL, JUDGE:

¶1 Defendant/Appellant, Mary C. Thompson, appeals from the trial court's judgment dissolving the partnership of Plaintiff/Appellee, Candace Joan Brown, and Defendant Scott Douglas Thompson, and dividing the partnership assets. In essence, Appellant contends (1) there was insufficient evidence to support a finding that Plaintiff and Scott were partners and (2) the trial judge erred by allegedly denying Appellant's request to present evidence regarding her supposed interest in the subject assets during the second stage bench proceeding. For the reasons set forth below, we affirm.

¶2 Plaintiff and Scott Thompson met and began dating in 2001. At that time, Scott lived in Oklahoma City with his parents, Gary S. Thompson (Defendant) and Mary C. Thompson (Appellant), and he owned a lawn mowing service. Plaintiff lived in a mobile home she owned in Yukon and she worked at a hotel. Soon thereafter, the two began living together. Plaintiff testified the couple then began formulating a plan to acquire real estate, primarily in the area around Jones and Luther in Northeast Oklahoma County. Plaintiff explained that they wanted to acquire rental property to generate income when they retired. In 2003, the couple purchased their first piece of property and a mobile home together, where they began living. Plaintiff testified proceeds from the sale of her mobile home were used to help with the land and new mobile home purchases.

¶3 Over the course of the next decade, the parties acquired numerous rent houses and parcels of raw land. During that period, Plaintiff testified she was responsible for locating many of the properties and she worked alongside Scott in preparing the properties for use by tenants and in property upkeep. Plaintiff also worked at Scott's mowing service and his funeral home display business. Rather than pay Plaintiff for all of the work she performed, the couple agreed Plaintiff's income would be combined with rental income to acquire additional properties. Plaintiff also testified she contributed to the joint venture substantial sums of her own money, including $35,000.00 from an automobile accident settlement, $29,000.00 in back child support payments from her former husband and a $9,500.00 Social Security disability lump sum payment. Scott handled all of the couple's finances. The majority of rental income was paid in cash, which Scott conceded was kept in a large home safe or in a bank safety deposit box. Plaintiff had access to neither.

¶4 On January 1, 2013, Scott told Plaintiff their relationship was over and he demanded she move out of their house. Plaintiff initially brought an action for divorce, alleging the parties had a common law marriage and seeking an equitable division of the marital estate. After Scott denied the existence of a marriage and denied Plaintiff was entitled to any of the real estate holdings, Plaintiff dismissed the divorce action.

¶5 Plaintiff filed the present action alleging she and Scott were partners in a real estate venture, and she was entitled to her share of those properties. The petition named as defendants Scott and his mother (Appellant). Appellant was named as a defendant because Plaintiff learned that title to several of the partnership properties had been transferred to Appellant. Plaintiff maintained Appellant was not involved with, nor had contributed to, the joint venture. Plaintiff subsequently amended her petition to add as defendants Scott's father, Gary S. Thompson, as well as three limited liability companies, after discovering Scott had transferred title to several other partnership properties to his father or those companies. As with the putative transfers to Appellant, Plaintiff alleged the transfers to Gary and the limited liability companies were undertaken by Scott in an effort to shield those properties from Plaintiff's claims.

¶6 The combined Answer of the defendants simply denied the existence of a partnership between Plaintiff and Scott. The Answer contained no affirmative defenses and no counterclaims.[1] Appellant never pled that she had any interest in the subject properties. Similarly, none of the defendants, including Appellant, asserted during the pretrial conference that Appellant had any interest in those properties. The Court bifurcated the proceedings for trial. The issue of the existence of a partnership/joint venture was tried to a jury in January 2016.

¶7 In addition to the facts set forth above, Plaintiff presented inter alia documentary evidence and the testimony of both an appraiser and an expert economist. The appraiser valued the couple's twenty-eight (28) properties at between two and two and one-half million dollars ($2,000,000.00 to $2,500,000.00). The appraiser noted the majority of the properties were not financed, but were purchased with cash. The appraiser also estimated the properties were capable of producing, as of January 1, 2013, between $22,700.00 and $25,650.00 in rental income per month. Plaintiff's economist determined her contributions to the joint venture, either in cash or as in-kind contributions, totaled $528,000.00.

¶8 Scott denied the existence of any joint venture agreement with Plaintiff and claimed she was not entitled to any of the subject properties. Appellant and her now former husband, Gary, testified, albeit unconvincingly, they were Scott's partners in a real estate business. The jury returned a unanimous verdict in favor of Plaintiff and against the defendants.

¶9 On February 17, 2016, the parties appeared for a non-jury trial. At that time, Scott's attorney sought to introduce evidence regarding ownership of the 28 properties identified in the jury trial portion of the proceedings. The trial court first questioned the timeliness of the documentary evidence sought to be introduced by Scott's attorney and noted Scott's failure to comply with a previous discovery order concerning tax returns. The court then reiterated that the non-jury proceeding was for determining damages and dividing partnership property. The judge specifically noted that during the jury trial, all parties considered the 28 properties listed on Plaintiff's Exhibit 8 were the partnership assets. Because the jury had already determined Plaintiff and Scott were in a partnership with respect to those properties, the court ruled there was no need for further evidence in this regard. Appellant was represented by her own counsel, who did not object to the trial court's declaration regarding proceeding with damages and property division. The court then tentatively ruled the property should be divided equally between Scott and Plaintiff, and suggested the parties undertake settlement discussions regarding property distribution.

¶10 Following a conference, the attorneys for all parties returned to court with an agreement, announced on the record, to award specific properties to each party to approximate a 50/50 split of the total value of the 28 subject properties. The trial court's Journal Entry specifically states, "The Plaintiff and all named Defendants reached a settlement on the issue of damages and division of properties, which was place of record in open court, . . ." The order then identified each individual property to be awarded to Scott and Plaintiff, respectively. From said judgment, Appellant lodges this appeal.

¶11 This partnership dissolution is an equitable proceeding. Butcher v. McGinn, 1985 OK 58, 706 P.2d 878. "In actions of equitable cognizance, the judgment made by the trial court will be reversed if it is clearly contrary to the weight of the evidence or contrary to accepted principles of equity or rules of law." Oklahoma Dep't of Sec. Ex rel. Faught v. Seabrooke Investments, LLC, 2017 OK CIV APP 42, ¶14, ___ P.3d ___. Accord In re Estate of Eversole, 1994 OK 114, ¶7, 885 P.2d 657. "Absent the standard's breach, the appellate court must indulge in the presumption that the decree is correct." Merrill v. Oklahoma Tax Comm'n, 1992 OK 53, ¶7, 831 P.2d 634.

¶12 "The essential criteria for ascertaining the existence of a joint venture relationship are: (1) joint interest in property, (2) an express or implied agreement to share profits and losses of the venture and (3) action or conduct showing cooperation in the project." Martin v. Chapel, Wilkinson, Riggs, and Abney, 1981 OK 134, ¶11, 637 P.2d 81. Title 54 O.S. 2011 §1-202(a) contains a similar requirement: "the association of two or more persons to carry on as co-owners a business for profit forms a partnership." In her first and second propositions of error, Appellant asserts insufficient evidence was presented to prove Plaintiff and Scott were partners in a real estate venture. Specifically, Appellant claims there is a complete absence of proof that Scott and Plaintiff agreed to share profits and losses of their venture, or that they carried on the partnership as co-owners for profit. In large part, Appellant bases her arguments on the fact that Plaintiff admitted she never received a profit from her partnership with Scott. We are unconvinced.

¶13 As set forth above, Plaintiff testified she and Scott agreed to pool their resources to purchase properties for future income. Profits from existing properties were used to buy additional properties. It is immaterial that Plaintiff had yet to realize any profits from the joint venture as of January 1, 2013. The law of joint venture requires an agreement to share in profits and losses; it does not require an actual profit (or loss).

¶14 The Martin Court further explained joint ventures:

The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each co-adventurer of something promotive of the enterprise. Each member of a joint venture acts for himself as principal and as agent for the other members within the general scope of the enterprise. The law of partnership and of principal and agent underlies the conduct of a co-adventurer and governs the rights and liabilities of co-adventurers and third parties as well. The law requires little formality in the creation of a joint venture and the agreement is not invalid because it may be indefinite with respect to its details.

Martin,1981 OK 134 at ¶11 (citations omitted).

¶15 "In the absence of an express agreement setting forth the relationship, the status may be inferred from the conduct of the parties in relation to themselves and to third parties." Id. at ¶12. "[N]o one factor is determinative [in proving a joint venture]; the facts must be examined as a whole." Id. at 13. "[J]oint venture property may be held in the name of one member in a fiduciary capacity for the others." Id. Finally, the "loss" element of a joint venture agreement is satisfied where a party is "in a position to sustain an actual loss by the failure of the enterprise." Boren v. Scott, 1996 OK CIV APP 115, ¶5, 928 P.2d 327, quoting Crest Const. Co. v. Insurance Co. of N. Am., 417 F.Supp. 564, 570 (W.D. Okla. 1976) (applying Oklahoma law).

¶16 In the present case, Plaintiff's evidence established she and Scott had a joint interest in 28 properties, they agreed to share profits and losses of the venture and their conduct showed cooperation in the venture. Although the defense presented evidence to the contrary, we find the trial court's decision was not clearly contrary to the weight of the evidence. Therefore, the trial court's judgment finding a partnership existed between Plaintiff and Scott is affirmed.

¶17 As her final proposition of error, Appellant asserts the trial court erred by preventing her from submitting evidence during the second stage of trial regarding her supposed interest in the subject properties. The record belies Appellant's argument. As previously stated, the trial court rejected an attempt by Scott's counsel to introduce, during the second stage, evidence regarding ownership of the 28 properties identified as partnership assets in the first stage. The court ruled such evidence was irrelevant during the second stage and intimated the documentary evidence was inadmissible because it was not timely produced prior to trial. The trial judge then made what was clearly announced as a tentative ruling regarding how she believed the property should be divided. Appellant's counsel did not specifically seek to introduce similar evidence, nor did he object to the trial court's ruling regarding Scott's evidentiary offer. Rather, Appellant and her attorney thereafter participated in a settlement conference where the parties agreed to a division of partnership assets, and thereafter announced the same in open court and signed a minute order to that effect. We also reiterate Appellant did not file a counterclaim or otherwise plead that she had any interest in the subject properties.

¶18 "Parties on appeal are limited to the issues presented at the trial level." Jones v. Alpine Investments, Inc., 1987 OK 113, ¶11, 764 P.2d 513. Because Appellant did not seek to introduce the now complained of evidence at trial - nor object to the trial court's ruling regarding Scott's attempted introduction of ownership evidence, she waived this proposition of error on appeal. The trial court was not given the opportunity to specifically rule for or against Appellant in this regard. "An appellate court will not make first-instance determinations of disputed law or fact issues." Bivens v. State ex rel. Okla. Mem. Hosp., 1996 OK 5, ¶19, 917 P.2d 456 (emphasis omitted). The judgment of the trial court is affirmed.

¶19 Along with a motion to dismiss, Plaintiff has filed a motion for appeal-related attorney fees and sanctions pursuant to 20 O.S. 2011 §15.1 and 12 O.S. 2011 §995. Section 15.1 provides for an award of attorney fees in meritless appeals; §995 provides for sanctions, including attorney fees, for filing a frivolous appeal. Division II of this Court reiterated the standard for determining frivolous appeals as follows:

"Stated in its basic form a frivolous appeal is one having no reasonable or legitimate legal or factual basis to support it. It is an appeal where the result is obvious or appellant's arguments are wholly without merit." TRW/Reda Pump v. Brewington [1992 OK 31] at ¶ 14, 829 P.2d [15] at 22 (citations omitted). However, an appeal is not frivolous merely because the lower court's decision is sustained, and all doubts as to whether an appeal is frivolous should be resolved in favor of the appellant. Id. at [¶14]. "Only if there are no debatable issues upon which reasonable minds might differ and the appeal is so totally devoid of merit that there is no reasonable possibility of reversal will an appeal be deemed frivolous." Id.

Shaw Group, Inc. v. Greer, 2012 OK CIV APP 24, ¶12, 273 P.3d 895.

¶20 Upon review of the instant record and applicable law, we cannot find this appeal is "so totally devoid of merit" as to constitute a frivolous appeal. Plaintiff's motion for attorney fees and sanctions is denied, as is Plaintiff's motion to dismiss this appeal.

¶21 AFFIRMED.

GOREE, P.J., and JOPLIN, J., concur.

FOOTNOTES

[1] Appellant's response to the original petition contained a counterclaim for forcible entry and detainer by which she sought to evict Plaintiff from the property Plaintiff shared with Scott. However, that counterclaim and counterclaims originally asserted by Scott were subsequently abandoned, not mentioned in the pretrial order and never tried.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2012 OK CIV APP 24, 273 P.3d 895, THE SHAW GROUP, INC. v. GREER
Discussed
 1996 OK CIV APP 115, 928 P.2d 327, 67 OBJ 3774, Boren v. Scott,
Discussed
 2017 OK CIV APP 42, 403 P.3d 6, OKLAHOMA DEPT. OF SECURITIES ex rel. FAUGHT v. SEABROOKE INVESTMENTS, LLC
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 113, 764 P.2d 513, 58 OBJ 3151, Jones v. Alpine Investments, Inc.
Discussed
 1992 OK 31, 829 P.2d 15, 63 OBJ 682, TRW/Reda Pump v. Brewington
Cited
 1992 OK 53, 831 P.2d 634, 63 OBJ 1291, Merrill v. Oklahoma Tax Com'n
Discussed
 1994 OK 114, 885 P.2d 657, 65 OBJ 3662, Estate of Eversole, Matter of
Discussed
 1996 OK 5, 917 P.2d 456, 67 OBJ 206, Bivins v. State ex rel. Okl. Mem. Hosp.
Discussed
 1981 OK 134, 637 P.2d 81, Martin v. Chapel, Wilkinson, Riggs, and Abney
Discussed at Length
 1985 OK 58, 706 P.2d 878, Butcher v. McGinn
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 995, Dismissal of Frivolous Appeals - Sanctions
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 15.1, Appeals - Additional Attorney Fees
Cited
Title 54. Partnership
 Cite
Name
Level

 54 O.S. 1-202, Formation of Partnership
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA